# Emma Myers's Appeal.

49  111
133  351
133  358

49  111.
135  172

49  111
160  262
160  510

49  111
189  638

*Construction of will.— What words create a life interest in legacy.*

A legacy to trustees " in trust for the use of a daughter of testator during life, and after her death for such issue, if any, as she may leave," with directions that " the interest on said legacy shall commence from the day of my death, and that the same shall be paid to my said daughter in monthly instalments of one hundred dollars," gives to the daughter only a life interest in the legacy.

APPEAL from the Orphans' Court of *Philadelphia*.

This was an appeal by Emma J. Myers, late Emma J. Snyder, and her husband Henry W. Myers, from the decree of the court below confirming the report of the auditor on the account of John S. Snyder and Joseph H. Snyder, executors of Joseph Snyder, deceased.

The main question before the auditor, and the one principally discussed, arose under the second item of the will of appellant's father, Joseph Snyder, deceased, who died April 24th 1862, and which is as follows:—

" I give and bequeath unto my friend Joseph R. Ingersoll, and my sons John S. Snyder and Joseph H. Snyder, the sum of twenty thousand dollars, in trust for the use of my daughter, Emma J. Snyder, during life, and after her decease for such issue, if any, as she may leave. I direct that the interest on said legacy shall commence from the day of my death, and that the same shall be paid to my said daughter in monthly instalments of one hundred dollars."

Mr. Ingersoll, by writing filed with the will, declined the appointment of executor and trustee.

The account of the executors and the receipts of Emma J. Snyder showed that for eight months from the day of the death of the testator they paid her $100 per month, on account of her legacy. They then filed their account.

On the 23d day of January 1863, the continuing executors and trustees presented their petition to this court, setting forth the will of the testator and the provision therein made for his daughter Emma; and that they had set apart a number of mortgages, therein specified, and other securities for the bequest of $20,000 in trust for the said Emma; and praying the court to approve of the investments, which was done. From that time the executors alleged that they paid, or offered to pay, the net income of the investments to her in monthly payments. Some of the recent payments were refused by her on account of the form of receipts insisted on by the trustees, being the same form in which the earlier receipts were given by her.

On the part of Mrs. Myers, it was maintained that the legacy

[Emma Myers's Appeal.]

of $20,000 was an absolute gift by her father, to which she was entitled in her own right with interest from his death. On the other hand, it was contended that the bequest was in trust to pay her the income for life, and at her death the principal to go to her issue, if any.

In the argument enforcing the last position, stress was laid upon the fact that Mrs. Myers had, in her receipts and otherwise, recognised the trust, and that this court had also done so in approving the investments.

The auditor decided that inasmuch as there was a direction to pay income to the *cestui que trust*, she was not entitled to the corpus of the gift.

To this report exceptions were filed for Mrs. Myers, but the court on hearing the case confirmed the report of the auditor, which was the error assigned here.

*Clement B. Penrose* and *E. Spencer Miller*, for appellant.

*A. V. Parsons*, for appellee.

The opinion of the court was delivered, February 24th 1865, by

READ, J.—The real question in this case is, the construction of one clause in the will of Joseph Snyder, the father of the appellant, Mrs. Myers. The will is dated the 24th of April 1862, and was proved on the 1st of May in the same year, and the legacy which forms the ground of the present controversy is in these words: "I give and bequeath unto my friend Joseph R. Ingersoll, and my sons John S. Snyder and Joseph H. Snyder, the sum of twenty thousand dollars in trust for the use of my daughter, Emma J. Snyder, during life, and after her decease, for such issue, if any, as she may leave. I direct that the interest on said legacy shall commence from the day of my death, and that the same shall be paid to my said daughter in monthly instalments of one hundred dollars."

The residue of his estate the testator divided into seven equal shares. To five of his sons he gave to each one share in fee simple. The other two shares he gave to the same trustees to receive and collect the income and pay the same quarterly to his other two sons, in equal shares, during their natural lives, and from and after the decease of either of them, to hold the share of such decedent to and for the use and benefit of such child or children, grandchild or grandchildren as he may leave. The same three persons were appointed executors with power to sell his real estate.

The natural construction of the first legacy is to give only a life interest to the appellant, with remainder to such issue as she may leave at her death. The rule is now entirely settled in England, that a legacy to A. for life, and after his death to his issue, gives the legatee an estate for life only, and that the issue

take as purchasers. This was the rule laid down by Lord Thurlow in Knight v. Ellis, 2 Brown C. C. 570, and after various contradictory decisions it is now recognised as the established law of the land.

In re Wynch's Trusts, 17 Jur. 588, Vice-Chancellor Stuart says, p. 593, "words importing a gift to issue, or a gift over on failure of issue, when applied in a will to personal estate, receive a different construction from that which they would receive if applied to real estate." "The reason of this qualification of the general rule is, that the operation of law independent of express direction makes real estate descendible, but makes personal estate distributable. The qualification of the rule has therefore been made in order to prevent the intention of testators being defeated. On this principle Lord Thurlow decided the case of Knight v. Ellis. It is, I think, a sound principle."

Upon appeal this case was heard before the full court of appeal, consisting of Lord Chancellor Cranworth and Lords Justices Knight Bruce, and Turner (5 D. M. & G. 188, 23d Law J. Ch. 930), and the decree below was affirmed, Lord Cranworth using this expressive language: "Are we to act upon rules having their foundation upon and springing from principles of tenure, or are we merely to look at the language used in order to ascertain the intention of the giver?" Lord Justice Turner said, "The feudal principle does not reach to the subject-matter, and so far from the application of the rule to personal estate effectuating the intention, it directly and immediately defeats it, for it gives the absolute interest to the parent and prevents the issue *qua* issue from taking any benefit under the disposition. It is said, however, that a different effect ought not to be given to the same words as applied to real and personal estate; but the subject-matters are wholly different. The real estate is capable of entail, the personal not."

The ruling in this case was followed by the Master of the Rolls in Goldney v. Crabb, 19 Beav. 338, and by Vice-Chancellor Wood in 1860, in Jackson v. Calvert, 1 J. & H. 230. In the last case there was a devise of real and leasehold estates, together to A. for life, and after his decease to the male issue of the body of A. in equal shares and proportions, the leaseholds being the bulk of the property, and the Vice-Chancellor held, that A. took an estate tail in the freeholds, and one for life in the leaseholds. This doctrine is clearly stated in the second volume of Jarman on Wills 539, in the third edition by Wolstenholme and Vincent, 1861, and in 2 Williams on Executors 999, and in Hawkins on the Construction of Wills 197,—the latest work on this subject, which has been very highly spoken of by the English judges. Lord St. Leonards, in his Treatise on the Law of Property, as administered in the House of Lords (64 Law Library

[Emma Myers's Appeal.]

207), speaks approvingly of Knight *v.* Ellis, and clearly considers the rule in Wild's Case as not applicable to personalty, which has been solemnly decided to be the law in Audsley *v.* Horn, 1 De G. F. & J. 226.

In Clarke *v.* Baker, 3 S. & R. 477, Tilghman, C. J., recognises the distinction between real and personal estate. "These words," says he, "*without leaving issue* applied to *personal* estate have been-held to mean issue living at the death of the person to whom the personalty is given in the first instance. But not so with regard to land. The distinction taken in the case of Forth *v.* Chapman, 1 P. Wms. 667, was well founded, because it carries into effect the intention of the parent. It would answer no purpose, to understand issue *indefinitely* in the case of personal property, because the law would not permit the issue to take." "Forth *v.* Chapman seems to have passed through the fire and come out pure."

In Redfield's edition of Story's Equity, vol. 2, p. 277, § 1067, the law is stated in accordance with the late English authorities, and there can be no doubt that this is the true rule, which, applied to the case before us, gives Mrs. Myers a life interest only under her father's will. The whole fund is given to trustees, who are to pay her monthly the .interest of it, to do which they must first collect and receive it, and therefore during her life it was a subsisting trust, intended to preserve the principal for those in remainder: Hall *v.* Nalder, 22 Law J. Ch. 242. Of course Mrs. Myers could not call for a transfer of the fund from the trustees or executors, and if so there was no error committed by the court below in confirming the report of the auditor.

Appeal dismissed at the costs of the appellants.