## Peterson's Appeal.    Peterson's Estate.

1. Testator gave an estate for life to each of his children, and provided that if any of said children should die leaving issue, said issue should, if under age, receive the income of their parents' share until they attained their majority, and if of age, then receive their parents' share at once. *Held*, that a minor grandchild took a vested interest, postponed only until the attainment of full age.

2. Where a discretionary power of sale is given by will to trustees, no conversion of realty into personalty will take place until a sale is actually made. To work a conversion the direction to sell must be positive, irrespective of contingencies and independent of discretion.

January 20th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   WOODWARD, J., absent.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1879, No. 3.

Appeal of Thomas K. Peterson and Israel Peterson, surviving trustees under the will of John Peterson, deceased, from the decree of the court confirming the adjudication of the account of said appellants.

John Peterson died December 27th 1855, leaving a will by which he devised all his estate, real, personal and mixed, unto Thomas K. Peterson, Israel Peterson and Edwin Mitchel, and to the survivors and survivor of them and to the heirs and assigns of such survivor in trust: first, for the payment of his debts; secondly, for the payment of certain annuities to his wife and one of his daughters; and thirdly, for the payment to each of his other eight children of the income of one-eighth part of his residuary estate during their respective lives, with the privilege of obtaining certain loans out of the moneys of the estate, for which interest was to be charged by the trustees.   As to the disposition of his estate after the death of his children the testator provided as follows:

"And from time to time as any of my said children, namely: the said Eliza W. Boyle (if she survive her husband and return to her family with her children, and to the Protestant faith, but not otherwise), the said Thomas K. Peterson, Israel Peterson, Alexander Peterson, Alfred Peterson, Francis Peterson, Mary Ann Mitchel, Jane Peyton, and John Howard Peterson, shall die leaving lawful issue, such issue, if under lawful age, shall be entitled to receive the interest and income of their parents' share equally among them—if one, solely, and if more than one, in equal parts; and as they severally attain such lawful age, they are to receive and be paid their share and portion of the principal or capital fund of which their parent had received the interest and income, the loan, if any, to such parent to be taken as part thereof; and those of my said children leaving lawful issue of lawful age, such issue shall receive and be paid the said principal or capital fund of which their parent had received the interest and income, such loan to be

| | |
|---|---|
| 88 | 397 |
| 140 | 547 |
| 88 | 397 |
| 160 | 71 |
| 160 | 449 |
| 88 | 397 |
| 164 | 65 |
| 88 | 397 |
| 173 | 116 |
| 88 | 397 |
| 178 | 111 |
| 88 | 397 |
| 193 | 414 |
| 88 | 397 |
| 199 | 67 |
| 199 | 68 |
| 88 | 397 |
| 202 | ²192 |
| 88 | 397 |
| 206 | ²631 |

taken as a part, if one solely, and if more than one, equally among them. But in case any of my said children should die without leaving such lawful issue, then and in that case the share and part of such child so dying, as well the real as the personal estate, shall lapse and fall back into my estate and be divided among such of my said children as may be then living, and the issue of such as may be dead, in the way and manner as I have directed in relation to their particular share of my estate.

"And in order to enable my said trustees to pay off and settle any of the shares and portions of my estate which may from time to time become due and payable on the decease of any of my said children, it shall and may be lawful for them, my said trustees, to take any of the unappropriated funds of my said estate, or to sell any of my real estate for such purposes, and in order to arrive at the value of such share at the time of the decease of any such child or children, it shall be lawful for the said trustees, or the survivors or survivor of them, with the child or children, if of full age, and the next friend or guardian of such as may be under age, mutually to choose a judicious and disinterested citizen, and these citizens, if an even number, to choose another, or in case they cannot agree upon such persons, then to apply to the judges of the Orphans' Court to appoint such discreet and judicious persons, who, upon being duly qualified, shall ascertain the value of such share or portion, and in order to do so, they shall make a just and fair valuation of all the real and personal estate—that part which is subject to a life-estate shall be valued but not divided and paid until after the falling in of such life-estate—and upon such share being so ascertained and a due record thereof made or being confirmed by said court, any of my said children shall be at liberty to take the same at such valuation, the eldest male having the first choice and so on to the youngest, and if none of the males will take, then to be offered to the eldest female, and so on to the youngest, and if none of them will accept thereof (my meaning is that the part which my said children may elect to take as above mentioned, is that part which may be found necessary to be sold to raise a fund to pay off the share of the child arriving at full age as above set forth), then and in such case the same shall be sold by my said trustees, or the survivors or survivor of them, who I also appoint executors hereof, at public sale to the highest and best bidder, any of my said children having the right to become purchasers thereof, such sale to be made in the same manner and on the like terms and conditions as I have hereinafter ordered and directed as to my estate generally, and with such funds to pay and satisfy the person entitled to such share, his or her portion thereof; and the like proceedings shall be had as often as it may be required to ascertain and pay off such share or shares."

The testator then nominated the trustees above named to be ex-

[Peterson's Appeal.]

ecutors of his will, and gave them full powers whenever they might deem it advantageous to his estate, or "for the purpose of more easily making partition and division thereof among the parties interested," to sell the whole or any part of his estate and to invest the proceeds or so much thereof as might not be required for the uses of his will in other real estate or in securities yielding income. He also gave them full powers of lease, repair and improvement of his real estate.

John Howard Peterson, one of the children of testator, died intestate, on May 29th 1875, leaving a widow, Caroline E. Peterson (now Speakman) and one child, Carrie May Peterson, who afterwards died on November 21st 1877, a minor. Edwin Mitchel, one of the trustees having died, the appellants, as surviving trustees, on January 29th 1878, filed their separate account in the Orphans' Court of Philadelphia county. Mrs. Speakman, the appellee, appeared before the auditing judge and claimed, as next of kin to Carrie May Peterson, to receive the income of John Howard Peterson's share of the estate accruing since the last payment to Carrie May Peterson, and also claimed the principal of said share. The auditing judge decided that letters of administration must be taken out on the estate of Carrie May Peterson, and awarded the accrued interest of John Howard Peterson's share to such administrator. He also decreed that the principal of said share "be valued and paid unto the said administrator according to the will of the testator."

To this adjudication the trustees filed the following exceptions :

1. The learned judge erred in deciding that Carrie May Peterson died seised of a fee in the share of testator's real and personal estate, bequeathed and devised in trust for her father, J. Howard Peterson, for life.

2. In deciding "that at the death of John Howard Peterson, his daughter, Carrie May Peterson, acquired an absolute vested interest in the share of the testator's estate given to her, and that this interest was not divested by reason of her death under the age of twenty-one years; but that it passed, under the intestate law, to her mother as her next of kin."

3. In not deciding, that upon the death of Carrie May Peterson, a minor, her father's share lapsed into the residuary estate of John Peterson.

4. In deciding, that the will of John Peterson worked such a conversion of John Howard Peterson's share, that the real estate unconverted at Carrie May Peterson's death, passed as personalty to her mother.

5. In awarding the share of John Howard Peterson in the real estate of testator, to the administrator of Carrie May Peterson.

The court dismissed the exceptions and confirmed the adjudication from which decree the trustees took this appeal.

[Peterson's Appeal.]

*Frank P. Prichard* and *Nathan H. Sharpless*, for appellants. —Where the gift consists merely in a direction to pay or divide at a certain age, the gift is not vested until the time for payment arrives: Seibert's Appeal, 1 Harris 501; Moore *v.* Smith, 9 Watts 403; Leake *v.* Robinson, 2 Mer. 363.

Where, however, the gift of income precedes, and is distinct from that of the principal, the devise is not vested but contingent, and especially is this the case where the gift is to a class, and the principal is not to be taken out or separated from the estate until the time of payment arrives: 1 Roper on Legacies *581; Batsford *v.* Kebbell, 3 Vesey 363; In re Ashmore's Trust, L. R. 9 Eq. 99; Spencer *v.* Wilson, L. R. 16 Id. 501.

The question raised in this case has never been decided in Pennsylvania, but was referred to by Chief Justice SHARSWOOD, in Provenchere's Appeal, 17 P. F. Smith 463.

To establish a conversion, the will must direct it *out and out*, irrespective of *all* contingencies. The direction must be *positive* and *explicit;* an imperative direction to sell: Anewalt's Appeal, 6 Wright 414–6.

A discretionary power of sale given to executors or trustees does not operate as a conversion until the power is exercised: Bleight *v.* The Bank, 10 Barr 131; Chew *v.* Nicklin, 9 Wright 84; Edwards's Appeal, 11 Id. 144; Page's Estate, 25 P. F. Smith 87.

Where the exercise of the power of sale is made to depend on any contingency, no conversion takes place before actual sale: Henry *v.* McCloskey, 9 Watts 145; Cobel *v.* Cobel, 8 Barr 342; Nagle's Appeal, 1 Harris 260; Stoner *v.* Zimmerman, 9 Id. 399; Miller & Bowman's Appeal, 10 P. F. Smith 404.

The selection of appraisers by the devisees, and the refusal of any of the devisees to take at the appraisement, are such contingencies as will prevent an immediate conversion: Boshart *v.* Evans, 5 Whart. 551; Anewalt's Appeal, 6 Wright 414; Neely *v.* Grantham, 8 P. F. Smith 433.

If the parties cannot agree upon the appraisers, how is the valuation to be made? The will provides that the Orphans' Court may appoint appraisers, but the will cannot confer jurisdiction upon the court. The Orphans' Court has no jurisdiction over such an appraisement, except to set it aside for fraud: Boger's Appeal, 10 Barr 440.

*Thomas H. Speakman* and *E. Spencer Miller*, for appellee.— Postponement of the possession or enjoyment of an estate or interest in property does not prevent its vesting, where the suspensive expressions refer to the time of possession, and not to the gift itself: Smith on Executory Interests, secs. 309, 310; Candler *v.* Dinkle, 4 Watts 143; Reed *v.* Buckley, 5 W. & S. 517; 1 Jarmon on Wills *727; Fearne on Remainders *552, note *g.* And where, as

[Peterson's Appeal.]

here, the whole interest or income is given in the intermediate time for maintenance or otherwise, the property will be held to be vested: Branstrom *v.* Wilkinson, 7 Ves. 421; Smith on Executory Interests, sec. 328; Provenchere's Appeal, 17 P. F. Smith 463.

Conversion is a question of intention, to be gathered from the whole will: Chew *v.* Nicklin, 9 Wright 84.

There is no estate given to any of the children, in any particular part or share of the realty, and the only means they have to obtain any rights, given them under the will, is by enforcing the execution of the trust reposed in the trustees: Morrow *v.* Brenizer, 2 Rawle 189.

As a further test of conversion, it is obvious that none of the children have any interest in the realty, which would be bound by a judgment, and if they take by election, under the will, it could only be as purchasers: Allison *v.* Wilson, 13 S. & R. 330; Morrow *v.* Brenizer, 2 Rawle 185; Dundas's Appeal, 14 P. F. Smith 325; Hannah *v.* Swarner, 3 W. & S. 230; Silverthorn *v.* McKinster, 2 Jones 72.

Mr. Justice TRUNKEY delivered the opinion of the court, February 10th 1879.

Did the testator intend to attach to the devises and bequests to the issue of his children a condition precedent that they should arrive at lawful age? The answer is in the terms of the will. Interest and income of both real and personal estate of the share of each child are payable during his or her life, and at death, without leaving lawful issue, such share shall lapse and fall back into his estate and be divided among such of his children as may then be living and the issue of such as may be dead, in the way directed in reference to their particular shares. In case any of his children "shall die, leaving lawful issue, such issue, if under lawful age, shall be entitled to receive the interest and income of their parents' share equally among them, if one, solely, if more than one, in equal parts. And as they severally attain such lawful age, they are to receive and be paid their share and portion of the principal or capital fund of which their parent had received the interest and income. * * * And those of my said children leaving lawful issue, of lawful age, such issue shall receive and be paid the said principal or capital fund of which their parent had received the interest and income." Full directions are given for ascertainment and settlement of the portions of his estate, which may from time to time become due and payable on the decease of any of his children. In every part of the will, bearing on the subject, the corpus of each child's share is treated as given to the lawful issue, and not a phrase indicates that any such issue, under age, is not on an equality with those of full age. The difference is simply this, that the one of majority receives his portion immediately, while payment to the one in his minority

7 NORRIS—26

is postponed, he receiving the interest and income in the meantime. In respect to the issue of his children, the gift of the interest and income is not distinct from the principal. Hence it need not now be said whether the doctrine in Spencer *v.* Wilson, Law Rep. 16 Eq. C. 501, where the income was the subject of one gift and the capital of another, will be adopted in Pennsylvania. Under John Peterson's will, that the lawful issue of his children take a vested estate, though in their minority when the parent dies, we consider not doubtful, but if it were, the doubt should be resolved against a contingent estate, for it is a rule of interpretation that, in doubtful cases, estates are to be held vested rather than contingent.

. Does the will work an equitable conversion of the real estate? This is the only remaining inquiry, for it is not alleged that there has been conversion by a sale. In order to arrive at the value of a share at the time of the decease of any child, the testator directs that appraisers be appointed to "make a just and fair valuation of all the real and personal estate," and upon such share being so ascertained, any of his said children shall be at liberty to take the part necessary to be sold to raise a fund to pay off the share of a child arriving at full age, the first choice given to the males in order of seniority and next to the females in like order, and if none of them will accept, then the same shall be sold by the trustees, "and with such funds to pay and satisfy the person entitled to such share, his or her portion thereof."

In another part of the will a discretionary power is given to the trustees, subject to consent of William Spooner, to sell the whole or any part of the estate, and to invest the proceeds in other real estate or personal securities, as they may deem best. The appellees admit that this discretionary power is no conversion. They also concede that conversion is a question of intention, to be determined by the terms of the will; and contend that the terms of this will . "decisively fix upon the land the quality of money." But, if this be so, what mean the various directions to be observed before the trustees can sell any part to raise money to pay off a share? Appraisers shall be chosen by the trustees and surviving children, if they can agree, but if they cannot agree, the appraisers shall be appointed by the court, to make a just and fair valuation of all the real estate, as well as personal, and ascertain the value of the share or portion of the deceased child. Upon due record of the valuation, or confirmation thereof by the court, the children may take the land, and should they so elect, the trustees can make no sale. Their power to sell depends upon the refusal of all the children to accept the share of the land at the valuation. "And the like proceedings shall be had as often as it may be required to ascertain and pay off such share or shares." Here are contingencies which may prevent a sale of any part of the real estate, during the life estates given to the children. The will works no conversion of

[Peterson's Appeal.]

land into money. Unless there be an imperative direction to sell, irrespective of contingencies and independent of discretion, conversion will not take place until the sale is actually made: Anewalt's Appeal, 6 Wright 414; Henry v. McCloskey, 9 Watts 145.

Moreover, this will, in whole and in its parts, shows that the testator contemplated that his real estate should remain in the trustees until those in remainder become entitled to possession. He gave them power to lease and collect rents. He gave them discretionary power, conditioned that William Spooner first assent, to repair, improve and build upon any of his lands, and defray the expenses out of his estate, and also to sell and re-invest in other real estate to be held for the same uses. He repeatedly directs payment of the "interest and income." He wills that if any child die without lawful issue, his share in the real and personal estate shall lapse. He made provision for adjustment of the share of a child who should die leaving issue. We discover no intention to convert. Many provisions of this will are vain, if the real estate is fixed with the quality of money.

We are impelled to the conclusion, that so much of the decree as rests upon the basis that Carrie May Peterson's interest in the real estate was converted, is erroneous.

> Decree reversed, and record ordered to be remitted for further proceedings.