# APPEAL OF GEORGE S. PEPPER, TRUSTEE.
## [WILL OF GEORGE PEPPER, DECEASED.]

APPEAL FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

120   235
166   307
120        235
 31 SC  624
f 31 SC 633

Argued April 2, 1888—Decided April 30, 1888.

A testator devised and bequeathed a share of his estate in trust for his son Charles, for life, " and from and after his death, then to the use of such of his children and issue, and in such shares and for such estates as he shall by last will appoint, and, in default of such appointment, then to the use of all his children that may be living at his death," etc.

The son Charles died leaving but one son, Charles R., and by his will appointed all the said trust estate to said Charles R. until the expiration of twenty-one years after the death of the survivor of several persons named, all in being, and upon the express condition that he should not in any manner convey, assign or transfer the same, or the rents, issues and profits thereof, or do or suffer anything whereby the same should be attached or seized in execution or subjected to the insolvent or bankrupt laws; and, should any of these things happen, and in case Charles R. should die before the expiration of said period of twenty-one years leaving issue, " then and in any such case I devise, bequeath and appoint my said share in my said father's estate to such issue, their heirs, executors and administrators, and if more than one, in such shares and proportions as if my said son had died seized and possessed thereof, intestate : "

*Held*, that as the estate was limited by the will of the first testator to a class to which Charles R. belonged and of which he was the only member, the donee of the power was without authority to appoint a forfeitable estate to Charles R., who therefore received an absolute estate unaffected by the invalid appointment.

Statement of Facts.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 319 January Term 1888, Sup. Ct.; court below, No. 73 January Term 1880, O. C.

On November 11, 1887, the account of George S. Pepper, surviving trustee of the share of Charles Pepper, under the will of George Pepper, deceased, which account was filed May 26, 1887, was called for audit before ASHMAN, J., when the following facts appeared:

George Pepper died on January 6, 1846, leaving several children, and among them a son named Charles Pepper. His will, admitted to probate on January 12, 1846, directed the partition and division of all his residuary estate into as many shares as he should leave children and issue of deceased children, living at his death, such issue to represent their parents, and the respective shares of his children, and issue of deceased children, to be allotted to them in severalty. There was then a further provision, indicated in the syllabus and fully appearing in the opinion, giving and devising the share of his son Charles to trustees in trust for his use for life, and, from and after his death, to the use ·of such of his children and issue, and in such shares and for such estates, as he should by last will appoint, etc.

The share of the son Charles was duly ascertained and separated by partition and division agreeably to the provisions of said will. Charles died, testate, on May 3, 1887, leaving surviving as his only issue one son, viz.: Charles Rockland Pepper, the appellee in this case, who was born on April 6, 1847, is single and unmarried, and who on July 2, 1868, just after he became of age, executed a deed conveying to George S. Pepper one equal undivided moiety or half part of all the real and personal property to which he then was or might at any time thereafter be entitled, in possession, reversion, remainder, expectancy or otherwise, under the last will of the said George Pepper, his grandfather, or any appointment made, or to be made, by said Charles Pepper, his father, in trust for certain uses and purposes not necessary to be here defined, as the validity of this deed was not questioned.

The will of Charles Pepper, deceased, of which George S.

Adjudication.

Pepper was make the executor, recited the donation of the power in the will of George Pepper, and in pursuance thereof devised and bequeathed all his share of his father's estate to his son Charles R. Pepper, in provisions also indicated in the syllabus hereto and fully appearing in the opinion.

The account settled showed a principal, consisting of securities enumerated, a balance in cash amounting to $10,745.89, and a balance of income of $10,195.68.

Upon the foregoing facts, Charles R. Pepper, not contesting his deed of July 2, 1868, but claiming that one half of the trust estate should be awarded to him absolutely and in his own right, under the will of George Pepper, deceased, the court, ASHMAN, J., on November 23, 1887, filed the following adjudication:

The objection presented at the audit, against the exercise of the power of appointment by Charles Pepper, the son, was twofold: that it violated the rule against perpetuities, and that it transcended the limits of the power. There seems to be no ground for the first position; the power was bound to be executed within lives in being at the death of the testator, and twenty-one years after the expiration of those lives, and the appointment was to persons, all of whom must be ascertained within that period. But the second point cannot be so easily dismissed.

The appointee, to borrow the argument in Wickersham v. Savage, 58 Pa. 365, took only under the will of the donor; he could take nothing under the will of the donee, because the latter had nothing to give; he was simply an agent to distribute. Looking, then, to the will of the donor, it is clear that an absolute estate was given among the children and issue of the donee. The utmost discretion of the donee of the power was to select from among that class. But this power of selection, and therefore of appointment, was gone, when, as was the fact, there was but one person in the class, and that person, as its representative, of necessity took the whole estate. Concede, for the purposes of argument, that under the authority to limit "in such shares and for such estates" as he might choose, the donee could fetter the gift to the grandson with a trust, provided the trust was so guarded as to be with-

in the limits of the rule prohibiting perpetuities. But plainly the donee has done more than this. He has imposed conditions' which imply a possible forfeiture of the estate, and, upon their breach, he has appointed in favor of a class which was not contemplated by the donor. It will not be contended that the issue of a living child, who are the subjects of this limitation over, can be included among the "children and issue" to whom the donor restricted the exercise of the power. The point, at all events, was decided in Wickersham v. Savage, just cited, and in Horwitz v. Norris, 49 Pa. 213. If we concede further that the appointment is void only as to the excess, we decide the question. We have, then, a gift to the son of the donee, coupled with a condition that during a certain period, he shall not incumber nor alien the estate, with a limitation over on breach of that condition. But the limitation over is void; and the son, by virtue of the gift to him by the donor of the power, in default of appointment will take the estate, absolved from the condition. He certainly cannot continue to hold the absolute estate, and be restrained from alienation.

The only answer to this would seem to be, that the restraining clause in the appointment to the grandson, was in the nature of a spendthrift trust, which would be upheld by the legal estate outstanding in the executors as trustees under the donor's will. Assuming that there was a trust, the query is, whether it was within the purview of the power. Undoubtedly very strong expressions against the right of the donee of a power to fetter the interest of an appointee, where the gift by the donor of the power is absolute, may be found in the cases. It is true that in Horwitz v. Norris, 49 Pa. 220, it was intimated, and the suggestion was acted upon in Boyles's Estate, 5 W. N. 363, that "perhaps in equity . . . . . an appointment to trustees in trust for the particular object designated by the donor of the power, might be sustained." In the case last named, the power was to the widow, to appoint "in such way or manner and in such proportions and for such estates" among the children, as she should direct, and it was exercised by a trust to pay the income during minority, for the support of a child, and the principal at the majority of the beneficiary. Here the entire estate was given to a member of

Adjudication.

the proper class, with a provision for minority which the law itself would have made in the absence of a trust. In Fidelity Co.'s Appeal, 4. W. N. 266, the Supreme Court say: "The testator having vested an absolute and unqualified interest in the children, in the several proportions distributed or divided to them, it is clear the widow could not, by any power of appointment, or by any directions or orders, limit to them a less estate, or so fetter it that it could not be fully used by each." In Wickersham v. Savage, 58 Pa. 365, where the power was to the donee, to appoint to his children "in such shares and proportions and for such estates," as he should, by will, direct, THOMPSON, C. J., said: "He," the donee, "could only distribute the estate already vested in the defined class." And he adds, what seems to be fully applicable here: "The appointee is one person; he takes the entire estate in remainder, as the representative of a class. Of course, in that case, no appointment could vary his interest." The same point was decided in Roe v. Dunt, 2 Wils. 336, where the gift was "in such proportions and for such estates," as should be limited. Yet in all of these cases, except Boyle's Estate, and perhaps Fidelity Co.'s Appeal, the appointment was void, because it embraced parties who were not rightly objects of the power; and the decision went upon that ground alone. On the other hand, a trust for the separate use of the appointee, who was a married woman, was permitted, in Alexander v. Alexander, 2 Ves. Sr. 642. And see Willis v. Kymer, L. R. 7 Ch. Div. 181, and Boyle's Estate, supra.

The auditing judge is not ready to say that the donee of this power might not engraft upon the ultimate gift of the whole estate to the grandson, a trust not tending to a perpetuity for the protection of the beneficiary. The power was to limit for "such estates;" and that phrase would embrace equitable interests. That such a trust may attend an estate, otherwise absolute, was decided in Ward's Estate, 13 W. N. 282, and the decision was sustained by the Supreme Court in Kyle's Appeal. But in the case in hand, the restrictive clause which has been alluded to, does not constitute a trust, and was not intended as a trust by the donee of the power. In terms as clear as well could be invented, he appointed an absolute estate directly to the grandson, and clogged the gift

with a void condition. Having vested the grandson with the legal estate, he took from the trustees, under the donor's will, all power to act, even if they otherwise possessed it, and rendered even a conveyance by them to the grandson unnecessary.

To recapitulate briefly, the auditing judge thinks that the appointment to the children of Charles Rockland Pepper was in excess of the power, not because it transgressed the rule against perpetuities, because it did not, but because it was to members of a class not named in the donor's will; that the power was a special one, and must be strictly construed; that the donor intended to confer only a power to distribute among children and the issue of deceased children, and there being but one child, the power perhaps ended; and, even assuming that the donee could qualify the absolute estate which was the subject of the power, by a trust intended for the benefit of the appointee, the gift of that estate directly to the appointee, but conditioned against alienation, was in no sense a trust, and was void, because against the policy of the law.

Charles R. Pepper is therefore entitled to the said one fourth part, absolutely. But, by deed dated July 2, 1868, duly acknowledged and recorded, the said Charles R. Pepper assigned and conveyed one half of his entire interest in the estate of his grandfather, George Pepper, to George S. Pepper, as trustee, upon certain trusts declared by the said deed. The capital of the trust estate is therefore awarded, and is directed to be divided as follows: One half part thereof to the said Charles Rockland Pepper in his own right, absolutely; and the other half part thereof to George S. Pepper, upon the trusts declared in the said deed of July 2, 1868.

A distribution having been made in accordance with the foregoing, the accountant, George S. Pepper, trustee under the will of George Pepper, and executor of the will of Charles Pepper, excepted to the adjudication:

1. Because the auditing judge decided that the limitations and restrictions upon the estate bequeathed and devised to Charles R. Pepper by Charles Pepper, in his last will, were void, and in excess of the power of appointment given to said Charles Pepper by the will of George Pepper, deceased.

2. Because the auditing judge decided that the said Charles R. Pepper took an estate in fee, clear of all limitations, under the will of Charles Pepper.

3. Because the auditing judge awarded one half of the principal of the trust estate to Charles R. Pepper absolutely and in fee.

Upon the argument of the foregoing exceptions, the court was evenly divided, PENROSE, J., filing the following opinion:

Under a power to appoint to such persons of a given class, and in such shares and for such estates as the donee may determine, it cannot be doubted that the gift of an estate for life or years would be valid; and the validity of a limitation over, provided it does not infringe the rule against perpetuities or embrace persons not of the designated class, is no less clear. In the present case the will of the donor gives the estate in trust for a son for life, and at his death " to the use of such of his children and issue and for such estates and in such shares as he shall by last will appoint, and in default of appointment then to the use of his children who may be living at his death and the issue of any deceased child, their heirs, executors, administrators and assigns, as tenants in common, the issue of any deceased child to stand in the place of the decedent and take only the shares their parents would have taken if living."

In execution of the power thus conferred the son's will provided as follows . . . . .

The son thus referred to was the only child. He was not born in the lifetime of the original testator, and was unmarried when his father died. Under the will of the donor of the power he acquired a vested estate, in fee, or the entire interest, subject, however, to being divested so far as the power should be validly exercised by his father, and only to that extent: Willis v. Martin, 4 Term R. 39; Gray on Perp., §§ 112, 258, 535. The sole question, therefore, is, has there been a valid exercise of the power?

Since the decision in Neilson's Estate, 17 W. N. 326, it must be conceded, so far as this court is concerned, that a power to appoint among a given class, in such shares and proportions as the donee may deem proper, is non-exclusive—that is, gives no right to altogether exclude any member of the class; though

in the recent case of McGibbon v. Abbott, L. R. 10 App. Cas. 653, it was held by the Privy Council, on appeal from the Supreme Court of Lower Canada, that, as in that province (as in Pennsylvania), the doctrine of illusory appointments had never existed, there was no reason to suppose the equally absurd doctrine of non-exclusiveness, in powers thus expressed, had been adopted; both having been regarded in England as so contrary to common sense that, after vexing the profession for many years, they were abolished, though at considerable intervals, by acts of parliament. But in the present case, the power is to appoint, not "to and among the children and issue" of the son, but to "such of" them and "in such shares and for such estates" as he shall determine; and this, under all the authorities, gives the right of selection—that is, is an exclusive power: Farwell on Pow., 294; Chance on Pow., § 1061.

The manifest purpose of the donee of the power was to protect the estate for the benefit of the son, during a time when, by reason of youth or inexperience, he might be incapable of taking care of it himself; leaving it at the expiration of the prescribed period, if there should be no breach of condition in the meantime, to pass under the provisions of the will of the donor. That the purpose thus disclosed is one which in Pennsylvania is looked upon with favor, is too well settled to require a citation of authority; though, of course, had anything more than a life estate been given to the son, a condition in restraint of alienation or affecting the rights of creditors would have been void, and the estate absolute.

But the right to alien, though an incident, is not an inseparable incident of an estate for life or years; and a condition in restraint of alienation attached to such estates is entirely valid: Co. Litt., 223, b; 2 Cruise's Dig., page 8, sec. 34, etc. Here—the legal estate, perhaps, continuing, under the will of the donor, in the trustees for the protection of the conditional limitations (though whether it does so or not is wholly immaterial to the present inquiry)—the use is limited to the son for a fixed term, viz.: until the expiration of twenty-one years from the death of the survivor of persons in being in the lifetime of the donor of the power; and, but for the condition to which it is made subject and the limitation over in case of

breach, the use so given would merge into the absolute estate in remainder belonging to the son under the original will. But merger never takes place unless the power of alienation extends to both estates : 4 Kent, page 101. If the estate does not continue in the original trustees, as the appointment to the son, during the existence of the term, is subject to conditions, he would have to enter security under the act of assembly in order to obtain possession, and there would thus be no danger of prejudice to creditors. Of course, if within the designated time no person should come into being capable of taking advantage of the breach, the condition becomes nugatory and the son's estate absolute ; and this brings us to the only question remaining for consideration, viz.: the validity of the limitation by way of springing use to the children of the son, in the event of a breach of condition.

Had the appointment been, generally, to the son for life, with remainder to his children or issue, as the final vesting might thus have been deferred for more than a life or lives in being at the death of the donor and twenty-one years thereafter, and the question is to be determined by possibilities, not actual events, it would have failed under the rule against perpetuities ; but this has been carefully guarded against, and the grandchildren who take must come into existence within the time allowed by the rule. If the gift had been contained in the original will—and this is the test—no one could have doubted its validity. Had the class in whose favor the power was to be exercised been " children " only of the donee, as in Horwitz v. Norris, 49 Pa. 213, and in Fidelity Company's App., 4 W. N. 265, a limitation by way of remainder to grandchildren or to appointees by will of children would, necessarily, have been bad ; as it would, also, in the latter case, under a power to appoint among children and issue, as in Wickersham v. Savage, 58 Pa. 371, since this might not only introduce persons not of the class but lead to a perpetuity.

But here the persons taking under the conditional limitation come within the precise terms of the power. They are to be " issue " of the son, and they are none the less his issue because their intermediate parent may be living.

It is true, in Wickersham v. Savage, supra, Judge THOMPSON expressed the opinion that the word " issue " spoken of

there was to be understood as referring to issue of a deceased child; but as the point was not involved in the case, this must be regarded as dictum only; and even if it were not, as the generality of the word in that case was defined, perhaps, by the employment subsequently of the word "said," used in immediate connection with the expression "issue of a deceased child," it would be no authority in the present case where no such qualifying or restrictive word is found. Moreover, the power in Wickersham v. Savage, according to the decision in Neilson's Estate, supra, was a non-exclusive power, while in the will now under consideration it is exclusive. The objects of the power are the children and issue of the son; the power is to appoint to " such " of them as he may select, and " in such shares and for such estates." Shares are one thing, estates quite another.

Why give the power to define the duration of the particular estate which may be appointed to a child, and deny the right to dispose of the remainder to such issue, children of that child, as, under the power of selection, might be chosen as the objects of its exercise? Protection may well be quite as important, in the judgment of the son, for his children, as it was for himself; and, to enable its accomplishment, the power was not confined, as in Horwitz v. Norris, etc., etc., to determining the shares of children, but extended to grandchildren or more remote issue, with the right to select individuals, and the super-added power to limit the estates to be taken by the appointees respectively.

There is no right, in the face of all of this, to say that the words " children " and " issue " are used interchangeably and in the same sense; children is a term which excludes grand-children, while issue includes the whole line of descendants, and the burden is upon him who asserts a more restricted meaning: Leigh v. Norbury, 13 Ves. 340. An additional word is presumed, under the familiar rule, to have an additional meaning. Nor have we the right to say that the "issue," spoken of generally in the provision for appointment, are necessarily, issue of deceased children. This is assuming an intention not disclosed by the language used, and inconsistent with the power to select objects and limit estates; and, moreover, as a matter of construction, negatived by the subsequent

provision for the devolution of the estate in case of the non-exercise of the power,—the "issue" of a deceased "child" being, in that event, specifically, and for the first time, mentioned and provided for. Expressio unius est exclusio alterius.

The authorities abundantly show that under an exclusive power to appoint to children and issue, the latter may take with their parent, either concurrently or consecutively: Hockley v. Mawbey, 1 Ves. 143; In re Veale's Trusts, 4 Ch. Div. 61; s. c., on appeal, 5 Ch. Div. 622. In the case last cited, under a gift in trust for a daughter of the testatrix for life and at her death without children "to and amongst my other children or their issue in such parts, shares, and proportions, manners and form, as my said daughter shall by deed or will . . . . limit and appoint," an appointment to a niece for life, to the exclusion of children of the testatrix and their issue, with remainder to the children or issue of deceased children of the niece, was good; and this, too, of a will, taking effect prior to the act of 37 and 38 Victoria (1874), which on its face appeared to confer only a non-exclusive power.

"It was at first argued," said the Master of Rolls, Sir George Jessel, "that the words ' or issue ' were substitutional, but that argument was soon given up. It is plain you must select from the class. It was then argued that the appointment must be among the children or issue living at the death of the donee of the power, and that as she did not exercise the power in favor of all the objects the appointment was bad. Now where do you find in the will any expression showing an intention on the part of the testatrix that the objects of the power were to be limited to those living at the death of the appointor? I find the word 'issue,' simply, meaning issue forever. The testatrix fixed no limit. Therefore, as the words stand, the donee of the power must appoint to issue forever, that is, to the descendants of every generation. Upon the actual words of the will you have no right to limit the power, but you have a right to limit it to a class to whom a valid appointment can be made under the law against perpetuities." The power there was held to be exclusive, as a matter of construction, and to avoid the absurd results which would have followed if it had been non-exclusive. In the present case, as we have shown, the power is clearly exclusive.

It is sometimes said that issue capable of taking under a power of appointment must have been born in the lifetime of the donee of the power. This, however, as shown by the case just referred to, is said only with reference to the rule against perpetuities under an unrestricted appointment, and can have no application to a case, like the present, where it is confined in express terms to issue born within twenty-one years after a life or lives in being while the donor of the power lived. " Where powers authorize an appointment to issue remoter than unborn children, it is not uncommon to find an express provision to confine the appointment within the limits of perpetuity:" Chance on Powers, § 323; see also Routledge v. Dorril, 2 Ves. 357.

In cases of this kind our astuteness should be directed towards supporting the execution of the power rather than defeating it, and as the appointment violates no rule of law; as it embraces no object not included both in the letter and spirit of the power; and as the purpose which it seeks to accomplish is one not only permitted by the law of Pennsylvania, but commended as " sanctioned by the kindliest feelings of our nature:" Norris v. Johnston, 5 Pa. 289, " especially where designed by a father for the protection of a son from his own improvidence:" Holdship v. Patterson, 7 W. 551, we must conclude that the power has been validly exercised, and that the estate is now held by virtue of it.

In my opinion the exceptions should be sustained.

HANNA, P. J., concurred with this opinion.

ASHMAN, J., delivered the following opinion.

The question in this case does not turn upon whether the power was exclusive, perhaps a better word would be selective, or whether it was non-exclusive; because, under it, the appointment has been to one object, and whether the donee intended it or not, an absolute interest has vested in that object and the power has thereby determined. The opinion, to which this is in the shape of a reply, treats the power as exclusive, and covering, as the classes from which the selection may be made, not only the children of the donee, but their issue in a lineal descent, which is bounded only by the rule against perpetuities.

The words of the power, if they stood alone, would undoubtedly uphold this theory; they were " to such children and issue " as the donee should appoint, and words even less expressive were held in Veale's Trusts, 4 Ch. Div. 61, to give a power of selection among both classes. But they are immediately followed, in default of appointment, by a gift over to the children and issue of deceased children, living at the donee's death; and, if the reasoning of THOMPSON, C. J., in Wickersham v. Savage, 58 Pa. 365, is valid, they show that the original testator meant by " issue," not what the word technically means, but living issue of children who should be alive at the death of the donee. Of course, the power was exclusive as to living children and such issue as have been described, but as there was only one child and no issue, the donee was restricted to that child, and his power of appointment ended with his power of selection. In Veale's Trusts, the power was to appoint to children or issue, and in default the estate was to pass into the residue. Sir George Jessel said the word " issue " meant issue forever, because the testator had fixed no limit. The reverse seems to be true here.

But, conceding that Wickersham v. Savage has nothing to do with this case, and that this power embraces children and issue in an unbroken line, the question is, can its exercise be sustained? And first, the power has been imperfectly executed. With an absolute estate to dispose of, the donee has directly appointed only a term for years. Beyond the gift of an estate for twenty-one years after the death of a certain survivor, he has given nothing. But he has appointed indirectly an estate, which amounts to an absolute interest, and has clogged it with conditions, which he could not do by any direct gift whatever. He gives and bequeaths to his son " until the expiration of twenty-one years after the death of the survivor " of six cestuis que vient, upon condition that he shall not convey or assign, etc., in the meanwhile. It will not be pretended that if the appointee shall survive this period and commit no act of forfeiture, he will not take the entire estate. It is true that his death within the designated time, leaving issue, is provided for. But that will not cut down the estate, previously given, to a life estate; he will still take an absolute interest, subject to divestiture. The estate is neither an estate

at will, nor for life, nor for years, and the appointee cannot be compelled to give security. It is not an estate at will, nor for life, because it is given only for years; and it has no effect as an estate for years, because the appointee is already in of an absolute estate under the will of the donor. This is recognized by the donee, who therefore makes no provision in case the appointee shall die without issue.

In whatever light it is viewed, the intent to vest the donee with an absolute estate, and at the same time take from him all power to alienate it, is more than apparent. He is now forty years old, and if both of the two survivors shall die immediately, he will still be debarred from controlling his property until he shall have reached the age of sixty-one, a period during which, by the accompanying opinion, he will be presumably liable to the follies of youth and inexperience. To outlive the survivor he may be compelled to last a century. During that time, although he will have all the insignia of ownership, with the corresponding ability to mislead creditors, he will have no power of self-protection; he may not sell to reap the benefit of an exceptional offer, nor to save himself from a falling market. It is said that the trustees, under the will of the donor, will hold the legal title. But the gift was not to them, it was directly to the appointee; and it is doubtful whether the power authorized the creation of a trust. See, as to this point, Fidelity Co.'s Appeal, 4 W. N. 266. The question then recurs to the condition imposed by the donee. The text law is thus stated by Mr. Sugden: " He (the donee) cannot annex any condition for his own benefit; nor can the property appointed be exempted by the donee of the power from the debts of the appointee, but it must be left to take the fate of being his property, and subject to be come at, as his creditors shall see fit . " Sugd. on Powers, 1st Am. ed., 547. He quotes in this the language of the Master of the Rolls in Alexander v. Alexander, 2 Ves. Sr. 645. See also Pawlet v. Pawlet, 1 Wils. 224. If this reasoning is correct, the fund should be awarded to the grandson.

FERGUSON, J., concurred with this opinion and in the adjudication filed.

The exceptions falling, the exceptant thereupon took this appeal, specifying that the court erred:

Arguments.

1. In holding that the power of appointment in Charles Pepper was not validly exercised.

2. In awarding one half of the fund to Charles Rockland Pepper and the other half to George S. Pepper as trustee under the deed of Charles Rockland Pepper.

3. In not directing the whole fund to be held by the trustees of George Pepper for the uses declared by the will of Charles Rockland Pepper.

*Mr. John G. Johnson* (with him *Mr. Wm. B. Robins*), for the appellant:

1. If the will of George Pepper be interpreted by the aid of common sense, untrammeled by authority, we will find difficulty in arriving at any other conclusion than that he meant his son Charles to have the power of selecting his beneficiaries amongst any of his issue, subject, of course, to the restraint imposed by the law that such issue must be born within the time fixed by the law against perpetuities. There is no decided case which obliges us to interpret the testator's words otherwise than in accordance with the suggestions of common sense. On the contrary, the authorities, notably Veale's Trusts, L. R. 4 Ch. D. 61, and 5 Ch. D. 622, sustain and enforce such interpretation.

2. It is objected that "The power has been imperfectly executed. With an absolute estate to dispose of, the donee has directly appointed only a term of years." This objection is well taken only if it were necessary to the validity of the son's exercise of the power that he should dispose of the whole fee. Was there such a necessity? The greater includes the less. A power to sell was held in Lancaster v. Dolan, 1 R. 231, and repeatedly since, to include a power to mortgage. The exercise of powers has often been set aside because of excess, but memory fails to recall an instance of such exercise being held bad because the power had been only partially executed. The power discussed did not require the whole "rem" to go to one person. The testator permitted it to be carved up into different estates, and permitted each estate to go to one, or to more. The bequest and devise to Charles R. was not bad because he took only an estate for years; and the bequest and devise of a remainder to his issue was not bad

because contingent. The lack of provision for the contin-
gency of the possible death of Charles R. within the prescribed
period, did not avoid the provisions in case of other contin-
gencies which might happen. To the extent that within its
limits the power to split up estates was executed, it was good,
—none the less because the estate, under certain contingencies,
might go to those who were to take in default of its exercise:
Sadler v. Pratt, 6 Sim. 632; Farncombe's Trusts, L. R. 9 Ch.
D. 652; 2 Sugden, Powers, § 249.

3. It is further objected: "He has appointed indirectly an
estate which amounts to an absolute interest, and has clogged
it with conditions which he could not do by any direct gift
whatever . . . . . The intent to vest the donee with an abso-
lute estate, and at the same time to take from him all power to
donate it, is more than apparent." Certainly, if it was com-
petent for the donee of the power to give a remainder to the issue
of Charles R., the provision which required the vesting with-
in the period allowed by law was perfectly legal. Would this
appointment in remainder be avoided even if the testator had
sought to impose, upon another limitation, an illegal condition
against alienation? There is a recognized distinction between
an appointment, bad because to persons not properly beneficia-
ries or of an estate larger than can be given, and one where
the donees are within the class and the estate given is not too
large, but there is an illegal condition superadded. In the
latter case the appointment is allowed to stand and the condi-
tion is disregarded: Webb v. Sadler, L. R. 14 Eq. 533; 8 Ch.
D. 419; Meredith's Trusts, L. R. 3 Ch. D. 757.

4. And it is said that during the prescribed period "although
he will have all insignia of ownership, with the corresponding
ability to mislead creditors, he will have no power of self-pro-
tection; he may not sell to reap the benefit of an exceptional
offer, nor to save himself from a falling market." How will
Charles R. be invested with the insignia of ownership? The
title to the real estate will mislead no one; it will be traced
through the wills of his father and his grandfather. The per-
sonal estate will be vested in the trustee. If it be not, the
assignment, if Charles gives the requisite security, will state
the limitations of his estate upon its face.

5. Why shall the law be strained to strike down this spend-

Arguments.

thrift trust? Presumably, what was done was done for a good reason, by a father who knew what was best.

*Mr. J. B. Townsend*, for the appellee:

1. The limitations of the will of George Pepper, deceased, carried this property to Charles R. Pepper in fee, he being the only child and issue of Charles Pepper, living at his death. This was a vested remainder in fee, and only liable to be affected by any testamentary appointment which might be made by said Charles Pepper in the contingency that he might leave other children, or issue of deceased children, living at his death in addition to said Charles R. Pepper. He could prefer one or more of such living issue above the other or others, and partially or wholly exclude others of such living issue, and that was the exact extent of any choice or power he could exercise by his testamentary appointment. He could create or declare no new trusts, for that power was not given to him: Wickersham v. Savage, 58 Pa. 365; Horwitz v. Norris, 49 Pa. 213; Fidelity Co.'s App., 4 W. N. 265.

2. There is a long list of cases which establish the rule that if a life estate is limited, and the remainder to children and issue of the life tenant, with a further limitation over to living persons, if no such issue exist, the word "issue," in that connection, is restricted in its construction to such issue as shall be living at the death of the life tenant, and it is the failure of that class of issue and not issue generally and indefinitely that the testator has always been held to mean: Myers's App., 49 Pa. 111; Powell v. Board of Missions, 49 Pa. 46; Umstead's App., 60 Pa. 365; Findlay v. Riddle, 3 Binn. 139; Sheets's Estate, 52 Pa. 257; Ingersoll's App., 86 Pa. 241; Taylor v. Taylor, 63 Pa. 481; Seibert v. Butz, 9 W. 490; Pennock's Est., 11 Phila. 623.

3. We may fairly claim that the appointment is an attempt to fasten upon the property the characteristics of inalienability and exemption from debts on the sole remainderman, who must take the fee-simple ownership and can take no less. A condition or conditional limitation restricting an owner from alienation is bad and not enforceable at law or in equity: Naglee's App., 33 Pa. 89; Doebler's App., 64 Pa. 9; Harker's App., 60 Pa. 141; 2 Jarman, 15, 19; Aman v. Vanorden, 1 McCarter 135.

4. The law leans powerfully in favor of remainders being held vested whenever they can possibly be so construed: Chess's App., 87 Pa. 362; McClure's App., 72 Pa. 414; Letchworth's App., 30 Pa. 145; Provenchere's App., 67 Pa. 468; Peterson's App., 88 Pa. 397; McCall's App., 86 Pa. 254. It is also a rule, in all cases of doubtful construction of wills, that the law of this state favors an appropriation of the property which shall be nearest to our law of descent and statutes of distribution. So in England: Clark v. Turner, 2 Freem. 198; Longmore v. Broom, 7 Ves. 124; Jones v. Torran, 6 Sim. 255; Thornton v. Bright, 2 My. & Cr. 230. To reverse the decree below, would be to overrule three well considered judgments of this court.

OPINION, MR. JUSTICE PAXSON:

This is a close case and not free from difficulty. It was heard in the court below upon exceptions to the rulings of the auditing judge. The court were divided and the exceptions fell. Two opinions have come up with the record, one of them sustaining the adjudication, the other sustaining the exceptions. They are both able and carefully prepared opinions. It is a pleasure to consider cases where the court below has done so much to aid us in our deliberations.

The single question presented by the record is, whether there has been a valid execution of the power of appointment under the will of George Pepper. The testator devised the share of his son Charles to trustees in trust for his use for life, "And from and after his death, then to the use of such of his children and issue, and in such shares and for such estates as he shall by last will appoint, and in default of such appointment, then to the use of all his children that may be living at his death, and the issue of any deceased child or children, their heirs, executors, or administrators, as tenants in common, in equal shares; the issue of any deceased child to stand in the place of their parent, and to take only the share their parent would have taken if living; and in default of such issue, then as to the one equal fourth part of the share appertaining to my son, to the use of such person or persons, and for such estates and in such proportions as he shall in any way appoint; and as to the remaining three fourths parts, and also as to the said one fourth

part, so far as the same shall not have been appointed otherwise by my said son, to the use of my then surviving children, and the issue of any of my children, then deceased, in the shares and proportions, and for the estates which they would have taken under the intestate law of Pennsylvania, if my said son had died seized in fee simple of such estate, without any wife surviving him."

Charles Pepper left surviving him one child, Charles Rockland Pepper, and no other issue. His said son was born after the death of George Pepper. He is now about forty years of age, and has never been married. It is very clear that under the will of George Pepper his son Charles took an estate for life, with remainder in fee to his son, Charles Rockland Pepper. This estate is indefeasible, unless it has been abridged by the donee of the power in the valid execution thereof.

It is well to bear in mind that whatever Charles Rockland Pepper takes, he takes it under the will of his grandfather. The donee of the power, Charles Pepper, had no estate to give him. Nor can he take anything from him. The estate was limited by the will of George Pepper to a class to which Charles Rockland Pepper belongs, and he is moreover the only member of that class. Had there been other children, brothers and sisters of Charles Rockland Pepper, the donee of the power could have appointed the estate among them in such shares as he might have seen proper. He might, perhaps, have excluded this one child from all participation in his grandfather's estate. As the case stands the donee of the power can neither exclude him nor diminish his interest or estate, because, as was before observed, the estate was given by George Pepper to a class of which Charles Rockland Pepper is the only representative or member. Charles Pepper cannot give it to any one else because it is not his to give; he is the mere donee of a power; that power has its source in the will of George Pepper; it is a special limited power, and it can only carry the estate to such persons as George Pepper directed it to go. The object of conferring this power was to enable Charles Pepper to distribute the estate to and among a certain class, or to such members of the class as he might think best for their interests. With but one member of the class in existence there can be but one distribution, and under such circumstances it is difficult to see the utility of any appointment whatever.

Charles Pepper, however, attempted to exercise the power of appointment given by the will of George Pepper. That the paper was carefully drawn is shown by the skill with which a perpetuity is avoided while approaching dangerously near the border. The material part of the execution of the power by Charles Pepper is in the following words:—

"Until the expiration of twenty-one years after the death of the survivor of my brothers, George S., Edward, Lawrence S., and Fredrick Pepper, of my sister, Mrs. Catharine Gardette, and of myself, all of whom were living at the death of my said father I devise, bequeath and appoint my said share in my father's estate to my said son Charles Rockland Pepper, upon the express condition, that he shall not in any manner convey, assign or transfer the same or the rents, issues and profits thereof to any person whomsoever, or do or suffer any act, matter or thing whereby the same shall be attached, seized or taken in execution or be made subject to or be affected by the insolvent or bankrupt laws of the United States, or of any other state thereof, or of any foreign country, and in case any of these events shall happen contrary to the true intent and meaning of the foregoing condition within the said term of twenty-one years after the death of the survivor of my said brothers, sister and myself, and also in case my said son shall die before the expiration of the said term of twenty-one years leaving issue, then, and in any such case, I devise, bequeath and appoint my said share in my father's estate to such issue, their heirs, executors and administrators, and if more than one, in such shares and proportions as if my said son had died seized and possessed thereof intestate."

It is not easy to describe the estate which the donee of this power has given to the appointee. It is perhaps a conditional fee, subject to forfeiture for breach of the condition against alienation. The thought naturally suggests itself, where did Charles Pepper get the power to annex a forfeiture to the estate he was attempting to appoint? It was not inherent in him by virtue of his dominion over the estate, for, as before observed, it was not his estate. It was urged, however, that it created a spendthrift trust and as such may be sustained under the authorities in this state. But the appointment contains no trust of any kind, and to sustain this assumption we

would have to write a spendthrift trust into the will of George Pepper. This cannot be done either by the donee of the power, or by this court. We look in vain through the will of George Pepper for one word which authorizes the donee of the power to appoint a forfeitable estate to Charles Rockland Pepper, or create a spendthrift trust. It is true it authorizes the donee to appoint the share referred to "in such shares and for such estates" as he shall deem proper. But the testator, when he used this language was contemplating the distribution of the share among a class consisting of several persons, certainly of more than one. And had there been several of the class the donee of the power could have appointed an estate for years to one, an estate for life to another, with remainders to the third in fee, or he could have made any other division which would have given the whole share to some one or more of the class. This is what the testator evidently meant when he used the words "for such estates." They have no meaning as applied to Charles Rockland Pepper as the only member of his class, unless we hold that they were intended to authorize the donee of the power to cut down the estate which he took under his grandfather's will, from an estate in fee to an estate upon condition and forfeitable for alienation. This we are not prepared to do.

A careful reading of the will of George Pepper leaves us in no doubt as to the testator's meaning. The share of his son Charles was to go in the line of inheritance. In default of appointment by the latter, the share is limited to the class who would take by descent from Charles, and we are of opinion that that class was to be determined upon the death of Charles. When George Pepper died, Charles had no children. He could not possibly know how many children Charles would leave. He therefore gave his share "to the use of such of his (Charles's) children and issue .... as he shall by last will appoint," and upon failure to appoint, "then to the use of all his (Charles's) children that may be living at his (Charles's) death." We think it is plain that the testator intended the share of Charles to go to such of the children of Charles as might be living at the death of the latter, and to the issue of any deceased child. This was the class who were to take, and the power was given merely to enable Charles to make distinc-

tions between the different members of the class, in case some should prove more worthy or more needy than others, or possibly to exclude some altogether. We see nothing to justify the donee of the power in giving to Charles Rockland Pepper a forfeitable estate, with remainder to another class not contemplated by the testator, which was not then, is not now, and may never come into existence. We think the foregoing views are fully sustained by Wickersham v. Savage, 58 Pa. 365; Horwitz v. Norris, 49 Pa. 213; Fidelity Company's Appeal, 4 W. N. 266.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.