### Adamson's Estate

*Albert Smith Faught,* for exceptant.

*J. Montgomery Forster,* contra.

*Frederick V. Hebard,* amicus curiae.

VAN DUSEN, P. J., November 12, 1937.—The fund before the court was given by testator in trust for the life of a daughter, Hattie, and after her death, if she should leave a husband or children surviving, "to pay or transfer the same to such person or persons as such daughter may direct by her will", and, in default of a will, to pass as the property of the daughter.

Hattie's will expressly declared her intention "that any and all property over which I have the power of appointment, particularly that referred to in the will of my father, William Adamson, deceased, shall go under the terms of this my will." Her own estate she left in trust to invest, and to pay an annuity to her sister, and then to pay the income to her husband, and then to her son, with remainder to his children. She authorized her trustees "in their discretion, either to sell or retain and hold the stocks, bonds and other securities, and real estate, in which any part of my estate may be invested at the time of my decease, and to invest any part of my estate in such investments, either those known as legal or otherwise, as they in their discretion deem advisable." In a codicil she says: ". . . in the Tenth clause of my

will I have given my executors and trustees certain powers as to the investment of my estate, and I now desire to enlarge and extend said powers so as to help Thompson Mahogany Company in which my said son Charles H. Thompson, Jr., and others dear to me are vitally interested, should the need for such help arise." She then authorizes the trustees to loan this company any sums of money which they may deem advisable upon the company's note with interest without security.

The fund is now held under the terms of Hattie's will. She left a husband and children. The trustees have loaned considerable sums to the Thompson Mahogany Company without security. The guardian ad litem for minor remaindermen objects to this investment.

He says first that the appointor has no power to enlarge the powers of investment granted by the original testator. In our opinion, as her power of appointment was unlimited, she might create trusts and estates for a limited time, and contingent estates, might appoint her own trustees, and give them powers of investment according to her own wishes, going beyond the powers of investment contained in the original will. She starts anew. "A life tenant with a general power of appointment has an estate tantamount to a fee": Lyon et al. v. Alexander, 304 Pa. 288; Perkins' Trust Estate, 314 Pa. 49. Pepper's Appeal, 120 Pa. 235, decides nothing to the contrary. That case turned on the proposition that there was only one person existing in the limited class to which appointment could be made, and therefore there was no power to give him a conditional estate, or indeed to exercise the power at all.

It is also objected that the powers of investment contained in Hattie's will are by their express terms applicable only to her own estate, and not to the appointed estate. If there were no reference in the will to the power of appointment, that power would nevertheless be exercised by the "bequest of the personal estate of the testator": Section 11 of the Wills Act of June 7, 1917, P. L. 403;

which is contained in the residuary clause of the will. If the statute turns a general bequest into the exercise of a power, then all the terms of the general bequest must apply to the appointed estate. For the purpose of fulfilling general bequests the appointed estate becomes one with the appointor's own estate. If a trust is created of the appointor's own estate, then the appointed estate goes in trust also, under the care of the same trustees, subject to spendthrift provisions, if any, and with the same powers of investment. We do not know how to accept some provisions and reject others. It does not detract from this result that the appointor makes express mention of the power, directing that the appointed estate "shall go under the terms of this my will". All the other terms of the will as written refer only to the appointor's own estate; but the appointed estate goes under those terms nevertheless: See Blackburne's Estate, 290 Pa. 55; and there is no reason for limiting this inclusive expression to the directly dispositive parts.

The account includes real estate acquired as the result of the foreclosure of mortgages. To pay the expenses of foreclosure and arrears of taxes and to make repairs to the property, the trustee has advanced money from the trust funds, charging some items in the account as filed to principal and others to income. The auditing judge, following Nirdlinger's Estate (No. 2), 327 Pa. 171, directed that all items relating to these properties both from principal and income should be placed in a separate account. Following the rule of that case, the advances for necessary salvage of the property should be made from principal if any is available, and if not, should be borrowed elsewhere if possible. When the property is sold and the salvage operation is over, the sums so borrowed, whether from the trust fund itself or from an outside source, should first be repaid with interest. We might add that in our opinion a separate account should be kept for each property. If this is understood, we believe that the

objections of the guardian ad litem will be removed, as we do not understand that the propriety of the expenditures as a salvage operation is objected to.

The exceptions are dismissed and the adjudication and the supplemental adjudication are confirmed absolutely.