58      365
31 SC 4624
31 SC 4633

# Wickersham versus Savage.

1. An estate was devised to J. S. for life, and at his death " to and among the children and issue of said J. S. in such shares and proportions, and for such estates, as he by will or other appointment in writing should direct." J. S. by will appointed the estate in trust to pay his son, his only child, the income during life, and after his death " to hold the estate for such uses and purposes" as he by will might direct and appoint.   Held, that this was not a good execution of the power under the devise to J. S.

2. The children of J. S. were remainder-men; the estate vested in them at the death of the testator could not be divested by the appointor.

3. Beyond the children and issue of J. S. no estate vested or was to be appointed; the appointor had no estate in himself to give, and could only distribute the estate already vested in the defined class.

4. A special power is to be strictly executed, otherwise its execution amounts to nothing.

[Wickersham *v.* Savage.]

CERTIFICATE from Nisi Prius.

This case was heard at Pittsburg October 1867.

John Savage filed his bill against Cadwalader Wickersham for the specific performance of a contract for the purchase of a lot in the city of Philadelphia.

The defendant in his answer admitted the making of the contract, but alleged that the plaintiff could not make a good title for the premises.

The land which was the subject of the agreement belonged originally to John Savage, the elder, who died in the year 1834; by his will the residue of his estate, which included the real estate in question, was disposed of as follows:—

"All the rest and residue of my estate, real and personal, I give, devise and bequeath to the said John Savage, for and during the term of his natural life, in such way and manner, however, as that he shall not dispose of nor anticipate it, and that it shall not be liable for his debts, whether present or future; and after his decease I give and devise the same to and among the children and issue of the said John, in such shares and proportions, and for such estates as he by his last will or other appointment in writing shall direct, and for want of such will or appointment, then to and among the said children and issue, and their heirs equally, the issue of deceased children to take only the share which their parent, if living, would have taken;" and if he should die without issue then over. The testator further directed, "In case my said son John shall marry, and shall leave his wife surviving him, that he shall have power, by last will or otherwise, to charge the said residue, with an annuity, to his widow, not exceeding three thousand dollars per annum, for the term of her natural life."

John Savage the second, the devisee, died in 1853, leaving a widow and one son, John Savage the third; John Savage the second, by his will, after providing for his widow an annuity of $3000, directed as follows:—

"I direct and appoint that the whole of the residue of my said father's estate shall be held by my executors hereinafter named, or the survivor of them, in trust, which said executors, or the survivor of them, shall receive the rents, dividends and income of the said estate during the natural life of my said son, and after first paying over to my beloved wife, Adelaide, the amount of the annuity which I have charged upon the said estate in her favor, shall pay over to my said son John the sum of $1500 in each and every year, and no more, in quarterly payments, until my said son John shall arrive at the age of twenty-five years, and the residue of the said income shall be invested by my executors and accumulate, and when my said son shall have arrived at the aforesaid age of twenty-five years, then the said accumulated interest shall be paid over to him, and the whole of the accruing in

[Wickersham v. Savage.]

come of the said estate thereafter (less the charges and expenses connected with the management of the said trust, and the aforesaid annuity in favor of my wife) shall also be regularly paid over to him during the term of his natural life.   It is distinctly understood, however, that what I have directed and appointed to be paid to my said son John shall be held in such way and manner, however, as that he shall not dispose of nor anticipate it, and that it shall not be liable for his debts, whether present or future, and I direct my said executors to hold the whole of the said estate in trust as aforesaid, or place it in the names of proper trustees, to be selected by themselves, with such powers of sale, lease and improvement as they may deem expedient for the more profitable management of the estate.   And upon the death of my said son John, then I direct my said executors, or the survivor of them, or the trustees, as the case may be, or the survivor of them, to hold the estate for such uses and purposes as my said son John may by any last will and testament in writing direct, limit and appoint, and in default of such appointment, then in trust for his right heirs and representatives under the intestate laws of Pennsylvania."

Adelaide Savage, the widow, and John Savage the third (the complainant in this case), by an instrument of writing dated March 28th 1854, requested the trustees holding the estate under the will of John Savage the second, to convey the same to the complainant, subject only to the annuity of $3000—which they declined to do.

Afterwards, upon a bill praying that the said trustees might be compelled to convey ; the court decreed that they should so convey ; the conveyance was accordingly made, the property agreed to be sold to the defendant being included in it.

A certified copy of the record of the proceedings in the last-mentioned bill was given in evidence before the master to whom this case was referred.   He reported that a good title was vested in the complainant, and that he was entitled to the relief sought.

The report of the master was confirmed by the court.   The defendant appealed, and assigned for error the decree of the court confirming the report.

*H. M. Phillips,* for appellant, cited  Clippenger v. Hepbaugh, 5 W. & S. 315 ; Rogers v. Smith, 4 Barr 93 ; Weber v. Samuel, 7 Id. 525 ; Miller v. Franciscus, 4 Wright 340 ; Kenyon v. Stewart, 8 Id. 191 ; 1 Sugd. on Powers 523 ; Vaux v. Parke, 7 W. & S. 19 ; Ralston v. Waln, 8 Wright 279 ; Barnett's Appeal, 10 Id. 392 ; Shankland's Appeal, 11 Id. 113.

*E. Olmstead,* for appellee, cited  Smith v. Starr, 3 Wh. 62 ; Hamersley v. Smith, 4 Id. 126 ; Hemphill v. Hurford, 3 W. &

S. 216; Williams on R. E. 100, note; Harrison *v.* Brolaskey, 8
Harris 299; Kuhn *v.* Newman, 2 Casey 227; Kay *v.* Scates, 1
Wright 31; Ralston *v.* Waln, 8 Id. 279; Barnett's Appeal, 10
Id. 392; Shankland's Appeal, 11 Id. 113; Wright *v.* Brown, 8
Id. 224; Haines *v.* Ellis, 12 Harris 253; Gelpcke *v.* City of Du-
buque, 1 Wall. S. C. Rep. 175; Kilheffer *v.* Herr, 17 S. & R.
319; Hess *v.* Heeble, 6 Id. 57; Long *v.* Long, 5 Watts 102;
Man *v.* Drexel, 2 Barr 202; 2 Smith's Lead. Cas. 454, 473,
&c.; Marsh *v.* Pier, 4 Rawle 273; 1 Greenlf. Ev.; § 536; Locke *v.*
Norborne, 3 Mod. 141; Outram *v.* Moorewood, 3 East 353; At-
torney-Gen. *v.* Warren, 2 Swan's Ch. R. 291; Attorney-Gen. *v.*
Newark, 1 Hare 400; Att'y-Gen. *v.* So. Sea Co., 4 Bea. 458;
McPherson *v.* Cunliffe, 11 S. & R. 422; Menges *v.* Dentler, 9
Casey 495; Fearne on Rem. 226, 233; Cunningham *v.* Moody,
1 Ves., Sr. 174; Willis *v.* Martin, 4 T. R. 39; Smith *v.* Folwell,
1 Binn. 546; Daly *v.* James, 8 Wheat. 495; 1 Sugd. 522; Bel-
lasis *v.* Uthwatt, 1 Atk. 426; Eby's Appeal, 14 Wright 311;
Bray *v.* Hammersley, 3 Simons 513; Morris *v.* Phaler, 1 Watts
389; Reading Railr. *v.* Lehigh Nav. Co., 12 Casey 204; Hor-
witz *v.* Norris, 12 Wright 213; 2 Chance on Powers 45; Player
*v.* Nicholls, 1 B. & Cr. 336; Watson *v.* Pearson, 2 Exch. 581;
Blagrave *v.* Blagrave, 4 Id. 550; Hawkins on Wills 143–4.

The opinion of the court was delivered, January 8th 1868, by
THOMPSON, C. J.—John Savage, the elder, grandfather of the
plaintiff, devised his estate, a portion of which has given rise to
the controversy in this case, to his son John the second for life,
and after his decease "to and among the children and issue of
the said John, in such shares and proportions and for such estates
as he by his last will, or other appointment in writing, shall direct;
and for want of such will or appointment then to and among the
said children and issue and their heirs equally; the issue of de-
ceased children to take only the shares which their parents, if
living, would have taken, 'but if he should die without *issue*,' then
over.'"

John the second had but one child, a son, and in 1858 died
leaving a will, in which, after charging the estate with the pay-
ment of $3000 annually to his widow, he appointed the residue of
the estate to be held by his executors in trust to receive and pay
over to his son John third, $1500 annually until he arrived at the
age of twenty-five years, and after that the whole income for life,
with a provision against liability for debts and the power of anti-
cipation—with power to the executors also to place the said estate
in the hands of trustees, to be held by them on the same terms.
"And upon the death of my said son John," says the will, "then
I direct my executors * * * or these trustees * * * to hold the
estate for such uses and purposes as my son John may by last

will direct, limit and appoint, and in default of such appointment then in trust for his right heirs and representatives under the intestate laws of Pennsylvania."

One question in this case is, was this appointment a good execution of the power under the will of John the first ? The first remark that may be made is, that this court on the 10th of April 1854, decided that it was not, and decreed a conveyance of the estate in fee to the present plaintiff by the trustees appointed by the executors under the provisions of the will of John the second.

It would be the shortest and easiest mode of disposing of this case to rest its decision on the conclusiveness of that decree. This the master did, and so did the learned judge at Nisi Prius. The very title now disputed was passed upon, created, it might almost be said, by it. It results from a conveyance directed in chancery, which vested the legal estate in the present plaintiff. He has dealt with it since as the unquestioned owner, sold portions of it, and mortgaged other portions ; and the sale of the property in question, as well as the other portions, was made on the faith of that decree. This the master finds. On a sale on execution if the judgment prove defective and be reversed, the title remains valid, because taken on the faith of the validity of the proceedings of a court having competent jurisdiction. The title in this case having passed by a decree of this court must be regarded as good in the hands of a bonâ fide purchaser, even if the decree might be assailable on principle. Courts constitute a branch of the government, and whatever they directly do towards the transmission of titles is and must be regarded as conclusive until set aside in some lawful and constitutional way. This rule applied here settles this case. The decree referred to stands untouched and in full force, and declares and establishes that the plaintiff here holds, with the right to convey in fee the property in question, which was parcel of the estate derived under his grandfather's will. On the conclusiveness referred to, the books abound in authorities ; among them are : Dentler v. Menges, 9 Casey 459 ; Kilheffer v. Kerr, 17 S. & R. 319 ; Marsh v. Pier, 2 Rawle 275 ; Long v. Long, 5 Watts 102 ; Mann v. Drexel, 2 Barr 202 ; Gelpcke v. The City of Dubuque, 1 Wall. 175 ; Yaple et al. v. Titus et al., 5 M. 195 ; Hazlett v. Force, 10 Watts 101 ; and Duchess of Kingston's Case, 11 State Trials 261. The decree standing thus unquestioned, we cannot disregard it nor anticipate its reversal. If it should ever be, the title of those acquired on the faith of it will be taken care of on these principles.

But I do not concede that the case before us depends alone for support on these principles. It seems to me that on original principles the decree must be affirmed. I will briefly notice this view.

John Savage, the testator, was the owner in fee of a large real

8 P. F. Smith—24

. estate, of which the property in question was parcel. In his will he gave his son John a life estate with the power of appointment referred to. John's children were undoubtedly the objects of the testator's bounty. They were the designated remainder-men after the life estate had expired, the only exception being in favor of the children of any deceased child of John the second, who were to represent their deceased parents, and take his or her share in the estate. Only to this extent, beyond the children of John the second, did the will go. The children of living parents were not remainder-men in the view of the power, for there is no other provision for grandchildren than that just referred to, and the term children does not in general in such a power extend to grandchildren: 4 Watts 82; 2 Wh. 376. As the power to be executed was in favor of living persons, the donee could make no contingent disposition of the estate to "issue" in its technical sense. That it was to be executed in favor of persons in being when executed is so apparent that it will not bear discussion. The persons to whom John was to appoint were his "children and issue," which latter word undoubtedly, I think, is filled by the provision for the children of deceased parents, if not to be regarded as merely equivalent to the word children, which it often is. As the estate vested in the remainder-men on the death of the testator, it could not be divested by the appointor. He could only apportion it among them in accordance with the power. He could create no new estate in favor of persons not of the class designated as remainder-men. The power was special: Horwitz *v.* Norris, 13 Wright 213, and to be strictly executed; if otherwise executed its execution amounted to nothing, as the appointor had no estate in himself to give, and no authority to give but that expressly conferred. He could only distribute the estate already vested in the defined class. Beyond the children and issue of John, no estate vested or was to be appointed. That it vested in them on the death of the testator will not admit of a doubt. It could not be in abeyance, and it was not given to John the second in trust. It therefore vested in John's children or issue. It so happened that John the second had only one child, the plaintiff, and no other issue. If no appointment had been made, it cannot be doubted that he would have taken a fee, not a life estate or an estate in tail; for the whole and entire remainder, if the expression may be allowed, was to go to John the second's children and issue, and the plaintiff was the sole representative of the class.

This clause is expository of the scope of the power to appoint, if there were any doubt on the face of it. The appointee is one person, he takes the entire estate in remainder as the representative of a class. Of course in that case no appointment could vary his interest. It would be a vain act to appoint. To this effect are Doe *v.* Denny, 2 Wils. 337, Roe *v.* Dunt, same book, cited in 1

[Wickersham v. Savage.]

Sug. on Pow. 523. The power to appoint did not therefore arise. Certainly it did not, if my premises are true that John the third represented the remainder-men ; and how this can be controverted I am at a loss to know.

But concede for the sake of the argument the contrary; the execution was manifestly in excess of the authority. The power contains not a word looking to an appointment of the estate in trust with a view to new uses. The authority to appoint " to and among the children and issue of the said John (the second) in such shares and proportions, and for such estates," &c., as the appointor shall direct, would not authorize the appointor to cut down the quantities of estate to the class of designated appointees. Not being the owner of the estate he could not do that, and the power itself gave no authority to do it. But this he attempted. He appointed the entire remainder in trust to John the third for life, with power to appoint to such purposes and uses as he might see proper, and in default thereof the estate in remainder to go over to his right heirs under the intestate laws.

Where did John the second obtain the power to limit a remainder-man to a life estate, and then authorize him to appoint the remainder to any use or purpose whatever without restriction? The answer must be, in the will of his father the donor of the power. There is where it must be or it is nowhere, and certainly it is not there, either expressly or by the most latitudinous construction. This being so, the execution of the power was transgressive of the authority and void. This was the view taken of a similar power in Horwitz v. Norris, 13 Wright 213.

On both grounds thus noticed I think the decree should be affirmed.

Decree affirmed at the cost of the appellant.