## Forrest's Estate.

*Powers—Excessive execution—Creating a spendthrift trust out of part of fund appointed.*

Where the testator created a trust for the life of his widow with directions to the trustees to pay the principal of the fund to his two sons "in such proportions and shares and for such estates" as she should by will appoint, with gifts over in default of appointment, and she executed the power in favor of the sons in equal shares by creating a spendthrift trust of a fund of $100,000 for each for life, with a general power of testamentary appointment and a gift over in default of appointment to those entitled as his heirs and next of kin under the statute of distribution, and by directing the trustees to pay one-half the residue to each, the execution is excessive, and the sons are entitled to the trust funds absolutely.

LAMORELLE, P. J., and THOMPSON, J., dissent.

Exceptions to adjudication.  O. C. Phila. Co., April T., 1895, No. 365.

*John Lewis Evans,* for exceptant; *M. Hampton Todd,* contra.

GEST, J., Nov. 17, 1926.—The testator left his residuary estate to trustees in trust to pay the income to his wife for life or widowhood, and upon her death "In Trust to pay and convey my trust estate to my above named two sons" (Herbert M. and Richard) "or their issue in such proportions and shares and for such estates as my wife by her last will and testament shall direct and appoint and in default of such direction and appointment, then in trust to pay and convey my trust estate to my above named sons, Herbert M. Forrest and Richard Forrest, share and share alike absolutely and in fee," with further provisions in case of their deaths before that of his wife, which need not be here recited.

The widow, donee of the power, in her will, reciting the same, divided the estate equally between the two sons.  Out of Richard's share, however, she bequeathed $100,000 to trustees under a strict spendthrift trust for him for life, gave him a general power of testamentary appointment, and in default of his appointment directed the payment of the trust estate to "the person or persons thereunto entitled as the heirs-at-law and next of kin of the said Richard under the statutes of Pennsylvania providing for the distribution of the estates of intestate decedents."  The donee also appointed a similar trust for Herbert, the other son, out of his share.  At the audit of the trustees' account of the estate held in trust for Richard, the latter claimed the fund absolutely, on the ground that Emma L. Forrest, the donee of the power, had exceeded it in creating the spendthrift trust for life, and in thus limiting the remainder, and that, therefore, the fund passed to him absolutely under the provisions of the testator's will.

The Auditing Judge dismissed the claim of Richard Forrest, and awarded the balance for distribution to the trustees, to which award Richard Forrest has filed exceptions.

The donee of a general power of testamentary appointment possesses, under the law of this State, a power almost equivalent to absolute ownership, but the present is the case of a special power, which must be carefully distinguished, for the donee of such a power cannot do more than is permitted by the will of the donor: Wickersham *v.* Savage, 58 Pa. 365, where the court said that a special power is to be strictly executed, otherwise its execution amounts to nothing.  In the present case, the will of the donor, who created the power, gave his estate in trust for his wife for life, with remainder to his two sons, and his wife was given only the power to determine the proportions, shares and estates in which the sons should take the trust property.  If the will had omitted the word "estates," no difficulty could arise.  Mrs. Forrest could then only divide the estate between her two sons and designate their

respective shares: Smith's Estate, 4 W. N. C. 265. The question is to what extent is her power enlarged by the inclusion of the words "for such estates?" Like every other phrase in the law, this is susceptible of interpretation according to the circumstances, but primarily "estate" refers to property or ownership, and in the present connection should mean either absolute estates or estates for life or, possibly, estates for years. This will was carefully drawn, and shows clearly that the testator understood the technical meaning of a trust, and he must have known that income, under the settled law of this State, can only be protected from creditors, or from anticipation, by the creation of a trust, yet the testator seems to have purposely refrained from doing so. In this important respect the case differs from our recent decision in Hays's Estate, 7 D. & C. 567. There is nothing in the will of this donor to indicate any intention whatever to give to his wife the power to devise his sons' shares of his estate to a trustee for them under a spendthrift trust, and thus restrict their ownership and control over their property, and, upon principle, this attempted execution of the power was invalid. It is necessary, however, to consider the important cases relevant to the subject.

In Pepper's Appeal, 120 Pa. 235, the power was practically identical with that contained in this testator's will, and the donee appointed the estate to an only son for twenty-one years after the death of the survivor of several persons named, all in being, and upon condition that he should not transfer or assign the same, or commit any act by which the estate should be attached or seized in execution, etc. It, therefore, differs from the present case in that Charles Rockland Pepper was the only member of the class which were the object of the power and no trust was in terms created for him. The language of the Supreme Court, however, is very pertinent to this case (page 254): "The thought naturally suggests itself, where did Charles Pepper get the power to annex a forfeiture to the estate he was attempting to appoint? It was not inherent in him by virtue of his dominion over the estate, for, as before observed, it was not his estate. It was urged, however, that it created a spendthrift trust and as such may be sustained under the authorities in this State. But the appointment contains no trust of any kind, and to sustain this assumption we would have to write a spendthrift trust into the will of George Pepper. *This cannot be done, either by the donee of the power or by this court.* We look in vain through the will of George Pepper for one word which authorizes the donee of the power to appoint a forfeitable estate to Charles Rockland Pepper *or create a spendthrift trust.* It is true it authorizes the donee to appoint the share referred to 'in such shares and for such estates' as he shall deem proper. But the testator, when he used this language, was contemplating the distribution of the share among a class consisting of several persons, certainly of more than one. And had there been several of the class, the donee of the power could have appointed an estate for years to one, an estate for life to another, with remainders to the third in fee, or he could have made any other division which would have given the whole share to some one or more of the class. This is what the testator evidently meant when he used the words 'for such estates.' They have no meaning as applied to Charles Rockland Pepper as the only member of his class, unless we hold that they were intended to authorize the donee of the power to cut down the estate which he took under his grandfather's will, from an estate in fee to an estate upon condition and forfeitable for alienation. This we are not prepared to do."

Pepper's Appeal referred to Wickersham *v.* Savage, 58 Pa. 365, among other cases, and the power in Wickersham *v.* Savage was very similar to that in the present case.

Pepper's Appeal has been followed in Johnson's Estate, 276 Pa. 291, and Rafferty's Estate, 281 Pa. 325, but it is not necessary to refer to these cases in detail, inasmuch as there is nothing in them especially applicable to the case at bar. In Johnson's Estate, the Supreme Court expressly said that the validity of the trust established for Elwood Johnson was of no moment, or admitting that Walter, the donee, had the power to subject the property to the limitations of a trust (which, however, was not a spendthrift trust) for his sons' protection during the latter's life, he lacked power to appoint beyond that period. In Rafferty's Estate, 281 Pa. 325, the power to appoint the income was general and the decision was merely that the donee might, under such a power, create a spendthrift trust for his son.

In Camilla Lewis's Estate, 29 Dist. R. 796, and David Lewis's Estate, 29 Dist. R. 798, affirmed in 269 Pa. 379, the power in the will of Camilla Lewis, which was given to the life-tenant, was to appoint by will among the donor's lineal descendants, "for such estate or estates and in such way, manner and form," as she should direct. The power in the will of David Lewis was narrower, being "to such persons being my lineal descendants as my daughter may have appointed by her will in such shares and amounts as she may choose and direct by such will." The donee appointed both estates in trust for two of the objects of the power for their lives, giving one of them a further power of testamentary appointment. This court held that the powers were well executed, at least so far as the life estates were concerned, and the Supreme Court (269 Pa. 379) affirmed the decision without adverting to the differences between the will of Camilla Lewis and that of David Lewis and, under the decision in McClellan's Estate, 221 Pa. 261, held that the trust was valid, notwithstanding the added power of appointment given to Edward D. Conner. The trusts, however, in Lewis's Estate were not spendthrift trusts, and the utmost to which Lewis's Estate is an authority is to hold that a power to appoint among a class for such estates, and in such way, manner and form as the donee should direct, is well executed by the creation of a trust for life.

Boyles's Estate, 5 W. N. C. 363, may be referred to as deciding that the donee of a special power of testamentary appointment may create a trust for the object of the power. There the power was very broad, giving the right to appoint *"in such way or manner* and in such proportions and for such estate or estates" as the donee might by her will appoint. Judge Penrose held that this empowered the donee to establish a separate-use trust for a married woman, one of the objects of the power, on the ground that such a trust really effectuates the intention of the donor by confining the benefits to the selected class, following Alexander *v.* Alexander, 2 Vesey, Sr., 642. But Boyles's Estate differs from the present in two important respects: First, the power was broader, as appears from the words "in such way or manner," a fact emphasized by Judge Penrose; and, secondly, the trust was for the separate use of a married woman and not a spendthrift trust. Alexander *v.* Alexander was decided in 1755, and there the power was given by the testator to his wife, the equitable life-tenant, to dispose of the subject of the power among their children in such proportions as she should by will appoint. At that time a direct gift to the married daughter would have been, under the common law, practically a gift to her husband (2 Blackstone's Comm. 433), so it was properly enough said by the Master of the Rolls that, "so far from the trust being an objection, it was more strictly carrying into execution the will of the father, a stronger execution of the power agreeably to his intent." That is a very different thing from creating a spendthrift trust when the power is to divide among the sons, for such a trust does not protect their ownership, but detracts from it.

It seems clear that the spendthrift provision in the trust is the only restriction that the donee desired or intended to place upon Richard's absolute ownership of his share of the donor's property, and it is an inseparable and essential feature of the appointment, so that if this is invalid, as we think it is, the appointment fails in its entirety, according to the principle applied by this court in Bruntrager's Estate, 2 D. & C. 747.

Our conclusion that the execution of this power is invalid is strengthened by a consideration of the remainders appointed by the will of the donee which are given after the death of Richard, in default of his appointment, to the persons entitled as his heirs at law under the intestate laws. It may be that such a power of appointment as that given by the donee to Richard is not in itself invalid, under McClellan's Estate, 221 Pa. 261, where, however, the power was so broad as to approximate a general power, but it is not necessary to decide the question, inasmuch as the gift over in default of appointment is to Richard's heirs-at-law under the intestate laws. As the objects of the power, definitely stated in the will of the donor, are his two children or their issue, and as the issue, which may thus be objects of the power, means the issue of deceased sons, as determined at the death of the donee (Wickersham v. Savage, 58 Pa. 365; Lewis's Estate, 269 Pa. 379), it seems clear that the remaindermen in default of appointment, whose interest is only subject to be divested by the exercise of the power in favor of an object of it, constitute an entirely different class, for the heir-at-law of Richard at his death is by no means necessarily his brother. The power being merely to appoint to the two sons named, the only valid remainder after a life estate to Richard would be to Herbert, and the remainder attempted to be given by the donee was insufficient to support the life estate. In Lewis's Estate the remainder, given in default of appointment by Edward D. Conner, was undoubtedly given to objects of the power, and the Supreme Court held it to be sufficient.

The execution of the power was, therefore, in our opinion, clearly excessive under all the authorities.

We should perhaps refer again to the recent decision of a majority of this court in Hays's Estate, 7 D. & C. 567, noted above, where a power to appoint among children in such shares and upon such trusts as the donee might by will direct was held to be well executed by a gift in trust for the objects of the power, subject to spendthrift trust provisions. The inclusion in the power of the words "upon such trusts" sufficiently differentiates that case from the present.

The exceptions are sustained and the balance for distribution as shown by the account is awarded to Richard Forrest, free of all trusts.

LAMORELLE, P. J., dissenting.—Believing that a spendthrift trust is not only an estate, but also that it is an estate within the meaning of the will of the donor of the power, I am of opinion that the construction of that will by the Auditing Judge is proper, should be upheld and that all exceptions should be dismissed.

Testator's widow was given an equitable life interest with special power of appointment of the *corpus* limited to testator's two sons, Herbert M. and Richard Forrest, "or their issue." Upon her was conferred the right of determining the proportions, shares and "estates."

In appointing outright to Richard one-half of the principal, excepting thereout $100,000, she thus decided what, in her judgment, was to be his absolute share. This done, she, under the authority given her, might well have appointed the $100,000 to the other son. She, however, concluded to and did

give this same son a life benefit in this $100,000, with spendthrift clause, remainder as he should appoint, and failing to appoint, to his heirs.

Her right to do the latter is before us on exceptions.

The instant case does not conflict with the decisions in Wickersham *v.* Savage, 58 Pa. 365; Pepper's Appeal, 120 Pa. 235, and cases following them. They hold that if there is a special power and it is limited to one person, who in the alternative would take outright, the donee may not by appointment reduce the *quantum* or in any way encumber the appointed estate. If, however, the right of appointment is not limited to one person and a life estate is given to one of a number, the court will not take up or consider the question of the remainder until such life estate terminates.

Such is my deduction from Lewis's Estate, 29 Dist. R. 796, and, also, 798; 269 Pa. 379.

In one of these cases, Camilla Lewis bequeathed and devised one-fifth of her residuary estate in trust for a daughter, Mary D. Conner, for life, with sole and separate use and with spendthrift clauses. The daughter was given a power of appointment among any of the *donor's* lineal descendants "for such estate or estates and in such way, manner and form" as she might direct. In event of failure to exercise the power, the trust estate on donee's death was to pass under the intestate law as if she died possessed thereof.

In the other, David Lewis, husband of Camilla, created a similar trust for his daughter. The power of appointment given her, however, was limited to descendants of the father "in such shares and amounts" as she should direct. Failing to appoint, the trust estate passed as did that under Camilla's will.

Mary D. Conner, the daughter, by her will appointed each estate to trustees, in trust, to pay one-half of the income to her son, Edward D. Conner, for life, with right of appointment generally by will, and to his children in default of its exercise.

We upheld the appointment as valid, so far as the equitable life estate was concerned. Appeals were taken in each estate. The Supreme Court confined its opinion to the estate of David; said Mr. Justice Kephart, speaking for the court (at pages 383-84):

"We are not called upon at this time to determine the validity of a supposed future exercise by Edward in contravention to the express terms of the foundation. We might say, as was said in McClellan's Estate, that the original language was written into each subsequent exercise of the power of appointment. It is not necessary for us to determine that question: nor do we think it necessary to determine the question of delegation of discretion, when, as we view it, Mary made a complete nomination by creating a trust estate, the income therefrom payable to her son for life, with alternate remainders: (*a*) power to the son to appoint by his last will, or, in default thereof, (*b*) to his children. The latter conditional appointment was undoubtedly good, amply sustaining the life estate of the son, preventing any merger that might possibly occur had it been absent and the other alternate remainder invalid—this, without the necessity of referring to the grandfather's will to support the life estate.

"We do not now determine that such remainder to the children should be the ultimate destination of this estate. That question may arise as Edward subsequently acts; it can then be raised in an appropriate proceeding. We here determine the life estate of Edward in the income is sustained by the alternate remainders supported by an active trust, and that the power of appointment as made by Mary was a lawful exercise of her right.

"The decree of the court below is affirmed, costs to be paid by appellant."

Forrest's Estate.

In Camilla's estate, the record was remitted without opinion, this order being entered: "The decree of the court below is affirmed, the costs to be paid by appellant."

In our adjudication, and also in our opinions, the line of cleavage was distinctly pointed out—thus distinguishing the rulings in Pepper's Appeal, Wickersham v. Savage, etc. (supra).

I now stress the fact that David, in his will, did not even use the word "estates."

My view is that, having given something to Richard in fee, and without any restrictions whatsoever, the donee of the power was free to ignore him completely as to the balance, or, in the alternative, to attach such conditions and limitations as she thought proper. Having fixed his share or proportion in an outright appointment, she gave him under the sweeping authorization covered by the word "estate"—in addition, a qualified estate in another portion, by attaching a spendthrift clause and conferring upon him the right of appointment.

If this proposition be unsound, then the right of appointment was "illusory." The sons were to take in any event in default of the exercise by her, each, one-half. If it was the sole purpose of donor to allow his widow to define the proportions, what did he mean when he said ". . . and for such estates as my wife by her last will and testament shall direct and appoint."

It is true that in the recent case of Hay's Estate, 7 D. & C. 567, the majority opinion sanctioned a spendthrift trust under a special power allowing the creation of trusts, and possibly because of the use of the word "trusts" in donor's will, but from Lewis's Estate, 269 Pa. 379, donee, having a special power, may appoint a trust for life, even though the will of the donor does not use the word "trust" at all; even though the word "estate" is not found in his will.

The majority opinion, in effect, ignores the word estates entirely. It would utterly destroy the discretionary right conferred on the widow. Instead of having a power, she is rendered powerless.

For these reasons I cannot concur.

THOMPSON, J., concurs in this dissent.