## Van Syckel's Estate.

*Wills—Power of appointment—Exercise of power—Principal — Income—Partial invalidity of exercise—Rule against perpetuities.*

1. Where an estate was given in trust by testatrix for her daughter for life with a testamentary power to appoint to and among her children or their issue, with gifts over in default of appointment, and the donee by her will and codicils, expressly exercising the power, gave the fund in trust until the decease of the last survivor of her children, with directions to their trustee to divide the net income quarterly "into as many parts or shares as, at each of said times of quarterly distribution, there shall be children of mine then living and children of mine then dead represented by descendants then living," and to pay one share of income to each child or its descendants, with gifts over of the principal on the death of the last survivor of her children to their descendants, the limitations of principal are too remote, as the interests are to vest only after the death of all of the donee's children, several of whom were born after the death of the donor.

2. The power of the donee to appoint the income to the issue of her children is confined to the issue of those of her children who died before her.

3. Where the power of appointment is exercised in favor of a class, but the appointment as to one of the class only is void, the appointment will be upheld as to the remainder of the class.

4. The total failure of the gifts of principal does not render the gifts of income void.

5. A provision in the daughter's will for her husband fails because it is not within the power.

Adjudication of trustee's account. O. C. Phila. Co., Oct. T., 1882, No. 284.

*R. M. Remick* (of *Saul, Ewing, Remick & Saul*), for accountant.

*Alfred M. Mohr* and *Daniel W. Simkins,* for Walter Goddard.

VAN DUSEN, J., Auditing Judge, April 13, 1927.—Sarah B. Van Syckel died Dec. 24, 1871. The present account is of a fund of $100,000 which she gave in trust for her daughter, Helen Goddard, for life, and thereafter, ". . . as she may appoint and direct by any last will and testament, to and among her child or children or their issue, in such shares and for such estates as she may appoint and direct: and in default of any such appointment and direction, then in trust to pay over, assign and convey the same to and among her child or children or their issue, in such shares and for such estates·as they would take the like property absolutely hers in case she were a widow, under the intestate laws of Pennsylvania; the issue of any deceased child or children taking equally among them only such share as their parent would have taken if living: to them, their heirs and assigns."

There were similar trusts for other daughters, and testatrix directed that all the estate so held in trust for the daughters should be kept in a joint trust, so that losses and gains should be equalized among them.

Helen Goddard died Feb. 19, 1891, leaving six children, Kingston S. Goddard, Walter H. Goddard, E. Claude Goddard, Josephine C. Goddard, Ellwood W. Goddard and Helen M. Goddard.

By her will and codicils, expressly exercising the power of appointment, she gave the fund in trust "until the decease of the last survivor of my children, to divide the net income quarterly, into as many parts or shares as, at each of the said times of quarterly distribution, there shall be children of mine then living, and children of mine then dead, represented by descendants then living . . . ;" and to pay one share of income to each child or its descendants. There was a provision for the husband, which fell out as to this fund because it was not within the power (9 Dist. R. 367); and by the first codicil she excluded the children or issue of Kingston S. Goddard by his first marriage,

and by the second codicil she excluded Walter H. Goddard and his descendants, giving Walter, however, $50 per month for life. Upon the death of the last survivor of her children, the principal was to go to their descendants, except the descendants of Walter and of Kingston by his first wife, and should there be none, then to the Home Missionary Society and the Masonic Home.

By adjudication of Judge Penrose, filed May 8, 1891, upon an account filed by reason of the death of Helen Goddard, two-thirds of the joint fund was awarded in trust for the two surviving daughters and the other third in trust for the children of Helen Goddard, under the provisions of her will. Two attempts to review this adjudication failed: 9 Dist. R. 367; 10 Dist. R. 744.

The other two daughters died and their shares have been awarded out, leaving only Helen Goddard's share in the trust.

Kingston S. Goddard, one of the children of Helen Goddard, was born April 25, 1864 (before the death of Mrs. Van Syckel), and died May 29, 1926, survived by two children born of his third wife, viz., Kingston S. Goddard and Bernard Lacey Goddard, both minors with guardians.

The status of the other children and issue of Helen Goddard is set forth in full in the petition for distribution and need not be repeated here, as it is only material on the question of notice of the filing of the account—except to state that three of her children were born after the death of the original testatrix.

The attack made upon the limitations of the Helen Goddard trust in the petition for review above referred to (also in Goddard's Estate, 9 Dist. R. 703; 198 Pa. 454) is now renewed.

It is clear that the limitations of principal are too remote, for they are to vest only after the death of all Helen's children; and three of them were born after the death of Mrs. Van Syckel, the original testatrix. It was claimed that the life estates to the children fell with the invalid remainder, but it was held in the cases referred to that, at least so long as the life-tenants were Helen's children, their estates were to be preserved. These estates, of course, vested at Helen's death, and, therefore, at a period not too remote.

Now Kingston, one of Helen's children, has died; and under her will, exercising the power, the issue of such child are to receive the parent's share of income after his death. Two objections are made to this in the interest of Walter, one of Helen's children, who was left out of the appointment, but will come in for an equal share in default of appointment. (Walter himself died Dec. 25, 1923):

1. That Helen's power to appoint to the issue of her children is to be confined to the issue of those of her children who died before her. In the gift over in default of appointment the issue are so defined, but not in the clause creating the power. Certain cases are very much in point:

Wickersham v. Savage, 58 Pa. 365. In that case the power was substantially like that under discussion, viz., a power in testator's son John to appoint to his "children and issue," and in default of appointment, "to and among the said children and issue and their heirs equally, the issue of deceased children to take only the shares which their parents, if living, would have taken." The appointment was to John's only son (called John, 3rd) for life, with general power of appointment in him, and in default of appointment, to his heirs under the intestate laws. The general conclusion was that as John, 3rd, was the only representative of the class among whom appointment could be made, he must necessarily take the whole, and, therefore, that any limitations by the appointor on his absolute right were ineffective. In demonstrating that John, 3rd, was the only person to whom appointment could be made, the court

Van Syckel's Estate.

said: "John's (the 2nd) children were undoubtedly the objects of the testator's bounty. They were the designated remaindermen after the life estate had expired, the only exception being in favor of the children of any deceased child of John, the second, who were to represent their deceased parents, and take his or her share in the estate. Only to this extent, beyond the children of John, the second, did the will go. The children of living parents were not remaindermen in the view of the power, for there is no other provision for the grandchildren than that just referred to, and the term children does not in general in such a power extend to grandchildren: 4 Watts, 82; 2 Wh. 376. As the power to be executed was in favor of living persons, the donee could make no contingent disposition of the estate to 'issue' in its technical sense. That it was to be executed in favor of persons in being when executed is so apparent that it will not bear discussion."

Pepper's Appeal, 120 Pa. 235. Here, again, the power was like that in Wickersham v. Savage and in the present case. Again, there was only one man in the class, and the appointment was to him, but with a curious provision for forfeiture if he alienated or became bankrupt, which was evidently intended as a substitute for a spendthrift trust. The conclusion was the same as in Wickersham v. Savage, and in arriving at that conclusion, it was said: "We think it is plain that the testator intended the share of Charles (the appointor) to go to such of the children of Charles as might be living at the death of the latter, and to the issue of any deceased child."

Wickersham's Estate (No. 1), 261 Pa. 121. The gift after the death of the testator's daughter, Mary, was of income to her "children or grandchildren her surviving" as she might appoint, and in default of appointment, "to her children or grandchildren, share and share alike, during the term of their natural life. The grandchildren to take but the share that their parent would be entitled to if living." There was no appointment. The gift to grandchildren, read literally, is susceptible of application to the children of those of Mary's children who died after her; but the court said: "We here construe the word 'or' in the bequest as 'and,' so it will read 'children and grandchildren,' thus forming a class. Then the rule applies that a gift to a class upon the termination of a life estate includes members of the class born after the testator's death: Edwards's Estate, *supra*. This would embrace all of Mary's surviving children and grandchildren, subject to the provision that the grandchildren take but the share their parent would be entitled to if living; that is, if living at Mary's death. It is then that the income of the residuary estate vests in her children and grandchildren, and that is the time to ascertain the members of the class. 'If living' means if living at Mary's death and not at some remote period. Had the bequest to such children and grandchildren been presently payable at testator's death, it would have included only such as were then in existence. But being payable or vesting at the death of the first taker, it embraces those born meantime. However, only the income for life is given Mary's children and grandchildren, and that having passed to those in existence at her death, there is no reason for construing the will so as to include grandchildren thereafter born or whose parents thereafter die. A life estate vesting in a surviving child under the will, as a member of the class, becomes extinct at his death, and does not pass to his children. Taking the will as a whole, in our opinion, it includes only such of Mary's grandchildren as might at her death stand in the place of a deceased child. So construed, it does not transgress the rule against perpetuities; for the life estate having vested in the children and grandchildren within the time, the fact that it might extend beyond is immaterial."

Van Syckel's Estate.

In Forrest's Estate, 8 D. & C. 461, there was a power to appoint among two sons "or their issue," and in default of appointment, to the sons equally. In the opinion, Judge Gest said: ". . . the issue which may thus be the objects of the power means the issue of deceased sons as determined at the death of the donee: Wickersham v. Savage, 58 Pa. 365; Lewis's Estate, 269 Pa. 379. . . ."

In none of these cases was the question present with which we are now dealing, viz.: The validity of an appointment to the issue of living children. But what was said was necessary in arriving at the conclusion, and I must regard these cases as authority for the reading contended for here. If it had not been for this authority, I would have hesitated. This construction, however, has the advantage that all the life estates which are within the power must then vest within the time fixed by the rule against perpetuities, for they will all vest at Helen's death. This is an important consideration: Rhodes' Estate, 147 Pa. 227; Wickersham's Estate, 261 Pa. 121, 127.

The result is that the attempted gift of life estates to the children of Kingston, Helen's son, who survived his mother but has now died, are not within the power, and that as to this share at least the provisions for default of appointment must take effect.

For this reason, too, as well as for remoteness, all the gifts of principal to the descendants of Helen's children are void; for all of Helen's children were living at their mother's death.

I do not understand that it is argued that the life estates to Kingston's children (if within the power) vest at too remote a period, for Kingston was living at the death of the original testatrix and the gifts to his children vest only at his death. But it is objected

2. That gifts to the issue of Helen's children (if within the power) may not vest until long after Helen's death, and, therefore, are not saved by Helen's life; that Helen had three children born after the death of the original testatrix, and the gifts to the issue of these children (if within the power) are not saved by the parent's life, as in the case of Kingston. There is no difficulty in agreeing with the argument so far.

Then it is sought to apply the rule that "if the gift is to a class, and it is void as to any one of the class, it is void as to all." This is said in Coggins' Appeal, 124 Pa. 10, to be well settled. In the opinion of Judge Ashman, in the court below, it is stated that the reason "is the difficulty of determining what would have been the intention of the testator if he had been advised of the existence of the rule;" and by Penrose, J., that if the gift is to a class "as to some members of which it might possibly not vest until after the prescribed period, it is void as to all, if the shares cannot be defined or separated, as they cannot be where all who are intended to take must be considered in estimating them." By Judge Ashman's test all the life estates would fall as soon as one of them became bad. By Judge Penrose's test they would not; for Helen had five children, each of whom would and could take a share, and the dropping out of one share at a later period because of a void disposition in the next generation would not affect the size of the other shares.

It seems to me that there should be a strong tendency to uphold so much of the appointment as is good. We need not reject the whole because of doubts as to how the testator would have made over his will had he known that some of it would fail. Shares of residue have failed in countless instances for all sorts of reasons and the parts well given have always been preserved. By the Wills Act of June 7, 1917, § 15, P. L. 403, they are even augmented. Whether the part fails because of lapse, or because it is a gift to charities

within thirty days, or because not within a power of appointment, or because given upon too remote a contingency, I see no difference. It is true that we are still dealing with a class legacy, representatives of one original member having been substituted for him. But the general rule declared in Coggins's Appeal must be applied with the reason of. the rule always in view. The best reason is the practical one, namely, the impossibility of determining shares until a period too remote. In the present case the five shares can be determined at Helen's death, which is not too remote; and the dropping out of one of them should not affect the others, whether that be because the share is not given within the power or is given upon a contingency which is too remote.

It still remains to consider the effect of the total failure of the gifts of principal upon the gifts of income. In part, this is much the same as the question just discussed—can the gifts of income as a practical matter be separated and saved? This is easily answered in the affirmative.

Then it is to be asked whether the whole plan is so tainted by remoteness that none of it can be saved. This has already been denied in this very case by the decisions referred to; and the conclusion is so abundantly supported by the latest decision (Hays's Estate, 288 Pa. 348) that further discussion would be unprofitable. Johnston's Estate, 185 Pa. 179; Lilley's Estate, 272 Pa. 143; and McCafferty's Estate, 2 D. & C. 29, turned upon the creation of a term of years, in which life estates and remainders were given, and it was held that, as the limitations dependent upon years and not lives were necessarily too remote, and the term of years existed only to serve the estates limited therein, if it was useless in part, it was useless as a whole, and the whole fell.

Whether Kingston's share now falls out (as I have decided) or is in some way to be saved, I do not see that the situation is different from what it was when five children received the income. What difference does it make whether five children get the income, or four children, or four children and the issue of a deceased child? The life estates are easily separated from the remainders, and the whole plan is no more disturbed one way than the other.

I, therefore, conclude that the failure of the appointment of Kingston's share will not affect the other shares, the income of which will continue to go to Helen's other children, as before; Kingston's share will go out to Helen's six children or their representatives.

The reason for the filing of this account is the death of Kingston S. Goddard, which occurred May 29, 1926, as above stated.

E. Claude Goddard, Josephine C. Davison, Ellwood W. Goddard and Helen S. Hadley, by writings hereto annexed, approve the account. All parties in interest are stated to have had actual notice.

There was no objection to the account, which shows a balance of principal, $100,399.33, which, composed as indicated by the account, is awarded:

To the accountant, the cost of a certified copy of this adjudication.

Four-fifths of the balance then remaining to be retained by the accountant in trust for E. Claude Goddard, Josephine C. Goddard, now Davison, Ellwood W. Goddard and Helen M. Goddard, now Hadley, for the uses and purposes declared by the will of the testatrix as modified by the will of Helen Goddard, exercising her power of appointment; and the remaining one-fifth to E. Claude Goddard, Josephine C. Davison, Ellwood W. Goddard, Helen M. Hadley, the personal representatives of Kingston S. Goddard and the personal representatives of Walter H. Goddard, in equal shares. The costs of this accounting, counsel fee, $250; clerk's costs, $50; acknowledgment and affidavit, $1, are to be charged solely to this one-fifth outgoing share: Miller's Estate, 12 Dist. R. 719.

Van Syckel's Estate.

The account shows a balance of income, $1133.09, which, subject to any distribution thereof already made, is awarded:

One-fifth each to E. Claude Goddard, Josephine C. Davison, Ellwood W. Goddard and Helen M. Hadley; and the remaining one-fifth, so much thereof as had accrued and was unpaid at the time of the last quarterly period of distribution prior to the death of Kingston S. Goddard, to the personal representatives of his estate; and the balance of this one-fifth then remaining to those entitled to this share of the principal, as above, in equal shares.

NOTE.—No exceptions were filed and the adjudication was confirmed absolutely under the rules.